# 𝔖taunton.

## W. F. Genheimer v. Crystal Spring Land Company, a Corporation.

September 12, 1930.

Absent, Campbell, Holt and Gregory, JJ.

S. D. Stokes, for the appellant.

Hall & Buford, for the appellee.

BROWNING, J., delivered the opinion of the court.

This is a suit in chancery instituted by the appellant against the appellee to restrain the appellee from obstructing or interfering with a portion of a street known as Third street if such portion extended east of what was known as the Yellow Mountain road.

The appellee prior to 1890 acquired a large tract of land in Roanoke county, Virginia, near the city of Roanoke; thereafter it subdivided a portion of this land into lots, streets and alleys, but no map anterior to 1905 showed any subdivision of the land east of Yellow Mountain road. In 1905 a map was made showing a subdivision which included a small part of the land east of said road. This map was recorded in the clerk's office of Roanoke county in 1906. On this map, as recorded, the appellee reserved the right to modify this plan by changing size and shape of blocks and lots, width, direction and location of streets, avenues and alleys, and by abolishing alleys, "provided no change shall be made in such portions of streets, avenues and alleys as may be bounded by or pass through blocks in which one or more lots may have been previously sold, without the consent in writing of the owners of such lots."

The recordation of this map was in accordance with the provisions of the statute which is now section 5219 of the Virginia Code, 1919.

The street which is in contention is shown on the map as extending east of Yellow Mountain road 312 feet through the lands of the appellee. The land on the south and east of said Third street was owned by the appellee and the land on the north was owned by J. J. Quinn to whom the

appellee conveyed it in the year 1903. This Quinn land which extended north of said street to an alley contained 2.86 acres and the deed thereto to Quinn was by metes and bounds with an independent plat or map attached thereto, the said land not being included or shown on any previous plat or map of the appellee. The above mentioned recorded map was not then in existence.

The plat or map with the J. J. Quinn deed showed no street to south of the land conveyed to him and no street east of Yellow Mountain road. The recorded map, with the aforesaid reservation thereon, showed no subdivision of the appellee's land east of Yellow Mountain road except six lots fronting on the east side of said road, none of which lots were ever sold by the appellee, and the J. J. Quinn land, previously sold to him, to the north of Third street, and another piece of land of irregular shape north of the J. J. Quinn land containing .72 of an acre and separated therefrom by an alley. One of the calls in the description contained in the deed from the appellee to J. J. Quinn was: "Beginning at the east line of the Mountain road and the north line of Third street, as laid off on the map of the Crystal Spring Land Company's property," *if such street were extended.* (Italics ours.) The said street was never opened or used and it has never been accepted by the county or city of Roanoke. The tract of land of irregular shape containing .72 of an acre was conveyed in the year 1907 to Annie Quinn, trustee, etc., and the conveyance refers to the appellee's recorded map but it is the only conveyance by the appellee of any land east of Yellow Mountain road which does refer to said map. The land at its nearest point is 400 feet from the street in contention, the J. J. Quinn land and the said alley lying between.

The appellant acquired the two Quinn properties in 1922 from W. N. Doak and wife, and the Doak deed to appellee thus refers to Third street: "If such street were extended."

The appellant subdivided his property in 1924 and in such subdivision he closed the aforesaid alley and his map thereof shows the street in contention as "street not opened." His map shows three lots on Yellow Mountain road on the east, all of which he sold and one of these, lot No. 1, which borders on the street in controversy was conveyed by the appellant to Ashby Scott who in turn conveyed it to the appellee, which conveyance to Scott by metes and bounds contained no reference to the controverted street, although such street would have been the southern boundary line of the lot.

Behind or east of the three lots mentioned the appellant still owns a lot which would front on Third street, if it were extended east of Yellow Mountain road. This lot is a portion of the J. J. Quinn land which, it will be noted, was conveyed by appellee before its map was recorded. It is the only land owned by appellant touching the controverted street if extended.

In 1927 the appellee subdivided a part of its lands east of Yellow Mountain road and caused to be made an extensive development costing some $100,000.00. The engineer, who planned the new development, advised appellee to acquire the Scott lot in order to control the entrance to this subdivision which, as heretofore said, was done.

This subdivision was called Sherwood Forest and was admirably adapted to meet the exclusive residential demands of a fast growing city. The map of Sherwood Forest shows that Third street, if it were extended, would cross and cut through lots 2, 3, and a part of 4 in section B of this subdivision.

Mr. Goodwin, president of the Crystal Land Company, testified as follows, page 67 of record:

"Q. What would be the effect on the property of the company of now opening Third street along the southernly line of Mr. Genheimer's original tract for a distance of 312 feet east of the Yellow Mountain road?

"A. It would be very damaging to the rest of our property, would ruin the whole outlay of our investment—make the purchase of the Ashby Scott lot absolutely useless to us.

"Q. Referring to the map of Sherwood Forest which you have filed with your deposition, please state what lots would be damaged and to what extent, by opening that street.

"A. It would practically ruin lots 2 and 3, and materially damage lot 4.

"Q. State what those three lots are worth in your opinion.

"A. Our price on lot number 2 is $7,500.00, lot number 3, $7,500.00, and the price of lot number 4 is $5,000.00.

"Q. Please state, Mr. Goodwin, what the improvements the company made in the Sherwood Forest development in the way of streets, sewers, water, etc., cost the company.

"A. My recollection is that the development in Sherwood Forest cost about $100,000.00."

The appellee on August 23, 1927, in accordance with section 5221 of the Code of Virginia, 1919, executed and recorded a written instrument vacating that part of its recorded map lying east of Yellow Mountain road which included the street in controversy. The statutory condition is "if such vacating does not abridge or destroy any of the rights or privileges of other proprietors in said plat."

The appellee by the plan of Sherwood Forest changed the location of Third street east of Yellow Mountain road and vacated that portion of it, if extended, as it appeared on the recorded map. Appellant claimed that this act constituted an invasion of his vested right of easement over the said street and that the closing of the street would make his aforesaid lot practically valueless, and in his bill asked that the appellee be enjoined and restrained from vacating, changing or obstructing Third street.

█ Appellant's counsel cited cases from this court and the Supreme Court of other States, the decisions of which are to the effect that when lots are sold from a subdivision in which streets and alleys are projected and shown on the map of such subdivision, to which map reference is made in the conveyances to purchasers of the lots, then such purchasers acquire the right to the use of the easement in such streets and alleys.

We have no criticism of these decisions, they are perfectly sound and correctly state the law as applicable to the cases decided but they are not determinative of the case we are considering.

█ In the first place the deed to J. J. Quinn did not refer to any map which showed any development of appellee's property east of Yellow Mountain road, the map recorded in 1906 did not then exist, and the map filed with the deed showed only the property conveyed. Third street was not shown thereon as passing east of the said road. The reference in the deed to "the north line of Third street" as a corner mark was in these words: "If such street were extended." It was never, in fact, extended. It was never opened. The projection east of the road would have begun in an embankment six feet above the road and its prolongation up a steep ascent to no terminal point.

We may fairly say that every act of the appellant, except the institution of this suit, negatives his contention here. He admits his knowledge of the condition imposed by the words in his muniments of title; he omits any reference to the street in controversy in his conveyance of the lot to Scott, though it would constitute one of its border lines; he repeatedly sought information from the appellee as to its contemplated developments with reference to this street which it could not and did not definitely give him and then he made his plan of subdivision of his own property, showing on his map the controverted street as "street not opened."

In his letter to the appellee of March 7, 1927, he states that he had laid off his property with reference to Third street extended and complains of the attitude of appellee and expresses doubt as to the legal status of his claims.

The evidence clearly shows, we think, that up to the time of the Sherwood Forest development there was no actual extension of Third street and that the appellant simply took a chance on the appellee's extending it in such a way as would be beneficial to him.

■ As was aptly and forcefully said by the judge of the trial court: "J. J. Quinn obtained by the recordation of the map only such rights to the streets thereon shown as were obtained by the public in general. He obtained an inchoate right in these streets which might or might not ripen into a public easement. The vesting of his rights and the rights of the public in Third street was conditional, the condition being the acceptance of the street by the county or city. Neither the county nor the city having accepted Third street, the condition has never been performed and Third street has never become a public highway."

■ As to the rights of the appellant as the owner of the Annie Quinn lot a different aspect is presented. Annie Quinn took her title in accordance with the recorded map, on which Third street is shown and, if this were all, the appellee, under the decisions referred to, would be estopped to deny the dedication of such street. But here the provisions of the statute, which the appellee invokes, intervene. These provisions were complied with by the appellee by a written instrument executed, acknowledged and recorded, vacating that portion of his plat upon which Third street, if extended, would be located. The condition imposed by the statute is that if "such vacating does not abridge or destroy any of the rights or privileges of other proprietors in such plat." As the owner of the Annie Quinn

lot, the appellant has not alleged or proven that any of his rights in the said street have been abridged or destroyed.

■ Further, if the appellant has any remedy for the wrongs alleged to have been done him, he has knocked at the door of the wrong forum. "He has not shown that he has any right to be preserved or that he has sustained any injury peculiar to himself."

In the case of *Fugate* v. *Carter*, 151 Va. 108, 144 S. E. 483, it is said in the syllabus: "The mere fact that the defendant built a garage in a public street, which of itself was a public nuisance, gives to the complainant, a landowner, whose lots abutted on the street immediately opposite to the garage, no right to maintain a bill for mandatory injunction. As a prerequisite to the maintenance of complainant's suit it was necessary to show that he had suffered, or will suffer, therefrom some special or peculiar damage, as distinguished from that of the general public."

■ Again the evidence abundantly proves that if the said street were extended in accordance with the contention of the appellant the injury to the appellee would be much greater than the benefit to the appellant.

*Akers* v. *Mathieson Alkali Works*, 151 Va. 1, 144 S. E. 492, 494: "The granting or refusing of an injunction is a matter which rests in the sound discretion of the chancellor. The injunction will not be awarded where the injury to the defendant is greater than the benefit to the plaintiff, nor where the complainant can be adequately compensated in damages."

The decree entered by the trial court is plainly right and its judgment is affirmed.

*Affirmed.*