# Richmond

## E. E. MAGEE AND ANOTHER v. W. H. OMANSKY.

March 1, 1948.

Record No. 3289.

Present, All the Justices.

The opinion states the case.

*Walter F. Ford* and *James T. Gillette*, for the appellants.

*George E. Allen*, for the appellee.

MILLER, J., delivered the opinion of the court.

The purpose of this chancery suit is to secure mandatory injunctive relief and damages. Appellants, E. E. Magee and E. A. LaFrage, are the owners of several lots of land in a subdivision known as "Walker Heights" near the town of Emporia, in Greensville County, Virginia. They seek to require appellee, W. H. Omansky, to remove five or six dwellings which they assert he wrongfully erected in a certain street called "unnamed street" which they claim constitutes a part of the subdivision. The removal of a small

portion of one dwelling alleged to encroach upon Pine Street is also sought.

Upon consideration of the evidence, which included numerous deeds in the chains of title to the lands owned by the parties litigant, plats disclosing the streets and lots in the subdivision and conflicting testimony of witnesses given in deposition form, the trial court, aided by a personal view of the premises, denied the relief sought and dismissed the original and amended bill of complaint.

The lots and streets in the subdivision and the "unnamed street" with the several houses sought to be removed therefrom appear upon the following diagram.

PLAT
OF
UNNAMED STREET
AND
AREA ADJACENT THERETO Exhibit "K"

LEGEND
EDGE OF STREET
LOT LINES
CORNER PIPE
BUILDINGS
BUILDING BLOCKING STREET

It is alleged that the appellee wrongfully erected the houses in the year 1941 upon the strip of land designated "unnamed street" thereby obstructing the same, and that one house encroaches upon a portion of Pine Street some 18 inches or thereabouts.

By deed from J. E. Baker and R. J. Green of April 7, 1905, Henry Weiss became the owner of a 21.3 acre tract of land which was bounded on the north by Brunswick Road (now West Atlantic Street or Route 58), on the east by the "unnamed road", 40 feet in width, on the south by a 40 foot road (thereafter named Washington Street), and on the west by a 40 foot road. This tract includes, among other land, the area west of the "unnamed street" as disclosed upon the diagram.

Upon inquiry to determine the right of appellants to have the several houses removed, it is necessary to ascertain what relation the "unnamed street" has to the original 21.3 acres acquired by Henry Weiss. That is, whether it was servient in any manner to the tract of 21.3 acres of which appellants later acquired a part.

It does not appear that Baker and Green owned the area included in the "unnamed street". The deed from them to Henry Weiss negatives any such ownership.

By deed of May 13, 1905, Henry Weiss conveyed to Hugh Mayhood 2.42 acres which consisted of the northeastern portion of the 21.3 acre tract, which included lots 6, 7, and 8. The parcel conveyed was almost square in shape and was bounded on the east by the unnamed 40 foot road, on the north by West Atlantic Street, and on the south by Pine Street. Pine Street constituted a part of the 21.3 acres. This conveyance of Weiss to Mayhood is the first appearance of Pine Street upon any plat. By subsequent transfers, i. e., through devise to Clare B. Mayhood from her husband, Hugh Mayhood, and deed from Clare B. Mayhood, widow, to George T. Williams, and finally by deed from Williams and wife to W. H. Omansky, dated January 30, 1941, that part of the 2.42 acres which lies immediately to the west of the "unnamed street" and

appears as lots 6, 7 and 8 on the diagram was acquired by appellee.

On October 29, 1940, appellee acquired from Jennie Powell a strip of land almost a parallelogram in shape on the eastern side of the unnamed street extending from West Atlantic Street to Pine Street. Thus by the deeds from George T. Williams and wife, and Jennie Powell, he became sole owner of all the property adjoining this "unnamed street" from West Atlantic Street to Pine Street.

By a conveyance from Henry Weiss to Baker, Turner, and Seay, the balance of 18.88 acres of the 21.3 acre tract was acquired by such grantees. Pine Street appears as a part of the 18.8 acres conveyed.

The appellants became the owners of the several lots lying between Pine Street on the north and Washington Street on the south and bounded by the "unnamed street" on the east, namely lots 51 through 57, both inclusive, upon the diagram. They also acquired certain other lots fronting on the north side of Washington Street.

From what tract of land the unnamed street was carved does not appear. Plats in evidence disclose its existence as early as 1900 or 1902. It definitely was not a part of the 21.3 acre tract, and was not servient thereto in so far as disclosed by this record. Therefore no owner of the 21.3 acre tract or any part thereof had the power or right to dedicate such street or grant an easement or interest therein.

From the above facts and appellant's claim, the primary questions presented are: First, what easement or rights, if any, did the appellants acquire in the "unnamed street", and second, if any easement or rights were had therein, have the same been abandoned or relinquished?

It appears from the record that this road was never accepted as a public highway. Appellants concede such fact by the following statement in their petition: "It is conceded, that so far as the record show(s), there has been no acceptance of the street in question either by county or municipal authorities. * * * "

In the case of *Genheimer* v. *Crystal Spring Land Co.*, 155

Va. 134, at page 141, 154 S. E. 489, the effect of failure by public authorities to accept a dedication is stated as follows:

"As was aptly and forcefully said by the judge of the trial court: 'J. J. Quinn obtained by the recordation of the map only such rights to the streets thereon shown as were obtained by the public in general. He obtained an inchoate right in these streets which might or might not ripen into a public easement. The vesting of his rights and the rights of the public in Third street was conditional, the condition being the acceptance of the street by the county or city. Neither the county nor the city having accepted Third street, the condition has never been performed and Third street has never become a public highway."

See also, *Norfolk* v. *Nottingham*, 96 Va. 34, 30 S. E. 444; *Chapin* v. *Lake*, 116 Va. 364, 82 S. E. 89; *Stanley* v. *Mullins*, *ante*, p. 193, 45 S. E. (2d) 881.

The above constitutes a sufficient answer to the first question presented and to appellants' claim that they enjoyed an easement or a right of way over such unnamed street solely because it is contiguous to their land.

The appellants rely upon the cases of *Walters* v. *Smith*, 186 Va. 159, 41 S. E. (2d) 617, *Gish* v. *Roanoke*, 119 Va. 519, 89 S. E. 970, and *Scott* v. *Moore*, 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749. Upon the facts disclosed these cases are easily distinguishable from the one at hand. In the above cases the complainants established the ownership of their parcel of land and the road or alley in question to have been in a common grantor. In each instance they sustained the burden of showing that the alley or road was in some manner servient to their land.

The following quotation from *Walters* v. *Smith*, *supra*, at pages 171 and 172, is of importance in this respect:

"The private right of Mrs. Smith to an easement in the alley is sustained by her contract with the grantor in her deed, irrespective of the status of the 20 foot strip of land as a public street or alley. No abandonment by the public could affect her private right to an easement appurtenant to

her land. At the time of her purchase, as we have noted, John Banner was the owner of all the property contiguous to that portion of the alley in which her claim is asserted. It is not denied that Banner had the right to convey to Mrs. Smith a right of way over the alley to Mill Road. That he did so is evidenced by the language of his deed to her and his uncontradicted representations as to the existence of the alley."

The fatal weakness of appellants' case is their total failure to establish the "unnamed street" as servient in any manner to their lots.

This brings us to a consideration of the second question presented.

Upon erection of the several dwellings complained of, the appellee opened and dedicated a new street on which these houses face, which appears on the map as "Street opened by W. H. Omansky." Acceptance of this street by the public authorities is fully established by the county having worked and improved the same.

After the inspection made by the trial court of the streets, lots and area in question, and being so fully advised upon the factual conditions obtaining, he reached the following conclusions as recited in his opinion filed with the record:

" * * * A personal inspection made by the court on the premises disclosed the fact that a part of the original forty foot road (unnamed street) is obstructed by the iron stakes placed there by the complainant, Magee, and that practically the entire forty foot strip has grown up in large trees, dense honeysuckle, and bushes and that there is no evidence, on the ground, of any part of the forty foot strip having been used as a roadway for many years. * * *

" * * * The County of Greensville has opened and is maintaining the new street on which the houses of the defendant front and which connects Pine Street with West Atlantic Street, thus evidencing its consent, if such were necessary, to the abandonment of the 'unnamed street'. The long non-user of this street and the acts of the parties

and their predecessors in title in allowing the strip of land to grow up in trees; the appropriation of the western ten feet in lots bordering thereon and the erection of the wood-shed on the eastern portion thereof, acquiesced in for many years are, I think, sufficient to show an abandonment *in pais* of such dedication as might have been made or intended."

■ If an easement or rights of any character had been acquired by the appellants in the "unnamed street", the factual findings of the trial court, after a view of the sub-division and streets in question, which are sustained by the evidence in the record, sufficiently disclose an abandonment or relinquishment thereof. The public authorities have fully acquiesced in this abandonment, if such acquiescence was necessary. By acceptance and improvement of the new road on which the appellee's houses face, that fact is clearly and unequivocally established. Appellants' abandonment or relinquishment of any easement that they might have had therein likewise appears from the facts and circumstances enumerated in the trial court's opinion.

In *Payne* v. *Godwin*, 147 Va. 1019, at page 1027, 133 S. E. 481, the following is said:

"Until the dedication has been accepted for the public, the dedicator or those claiming under him may revoke or abandon the dedication by consent of the State or munic-ipality, and such abandonment may be established *in pais* by long non-user and enjoyment of the same, without claim on the part of the municipality."

The effect of acts indicative of an intent to abandon coupled with cessation of use of the easement is in *Scott* v. *Moore, supra,* at page 687, stated as follows:

■ " 'A party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts *in pais* and without deed or other writing; and a cessa-tion of the use coupled with any act indicating an intention to abandon the right, would have the same effect as an express release of the easement without any reference to time.' " Citing *Vogler* v. *Geiss*, 51 Md. 407, 408.

To the same effect is the case of *Oney* v. *West Buena*

*Vista Land Co.*, 104 Va. 580, 52 S. E. 343, 346, 113 Am. St. Rep. 1066, 2 L. R. A., N. S., 832.

The facts hereinabove recited justify the application of this doctrine.

■ There has been no obstruction of any street or way immediately adjoining appellants' lots. The new street dedicated by appellee between Pine and West Atlantic Streets affords a direct and sufficient outlet from appellant's property to the main public highway. They, however, complain of the alleged encroachment of one of appellee's houses to the extent of some 18 inches upon the northern line of Pine Street. Upon conflicting evidence, the trial court concluded that this encroachment was not established; yet, if this trivial encroachment does exist, no special damage or injury has been sustained by the appellants as distinguished from the damage to the public in general. Their evidence wholly fails to prove that the same interferes with their ingress and egress to and from any of their property. That they are not, under such circumstances, entitled to a mandatory injunction for the removal of the same is abundantly sustained by the decision of *Fugate* v. *Carter*, 151 Va. 108, 144 S. E. 483. At page 113 thereof, in quoting from *Bowe* v. *Scott*, 113 Va. 499, 75 S. E. 123, the following is stated:

■ " 'Speaking generally the obstruction of a public highway is a public nuisance, and the trend of authority is that an individual cannot maintain a bill to injoin such nuisance unless he can show that he has suffered, or will suffer therefrom, special and peculiar injury or damage to himself, as distinguished from injury or damage to the public in general. Moreover, such special and peculiar injury or damage must be direct and not purely consequential, and must be different in *kind*, and not merely in *degree*, from that sustained by the community at large.' "

For the foregoing reasons, we find no error in the decree appealed from and the same is accordingly affirmed.

*Affirmed.*