Present: Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

JAMES W. PIZZARELLE, ET AL.

v. Record No. 990787 OPINION BY JUSTICE CYNTHIA D. KINSER
                                                March 3, 2000
WILLIAM H. DEMPSEY, III, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge


In this appeal, we address two questions: (1) whether an easement has been partially abandoned, and (2) if not, whether an encroachment on the easement is too insubstantial to warrant injunctive relief. Because we answer both of these questions in the negative, we will reverse the judgment of the circuit court denying injunctive relief to the dominant owners of the easement.

FACTS AND PROCEEDINGS

The easement at issue in this appeal was established in a written "Deed of Easement" recorded in the Circuit Court of Fairfax County Clerk's Office in December 1987. At that time, Merryhill Joint Venture (Merryhill) owned lots in a subdivision known as Walter Heights, designated as Lots 1, 2, and 3 in Section B; and Lot 7-B in Section A.

_____

[1] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

Merryhill created the easement for the purpose of ingress and egress over and across those lots for the benefit of the owners of the lots.[2] The instrument establishing the easement contained the following provisions that are pertinent to the present dispute:

1. The easement shall be used exclusively for the purpose of ingress and egress to the Lots.

2. No act shall be performed by any owner of a Lot, their tenants, guests, or agents which would in any manner affect or jeopardize the free and continuous enjoyment of any other owner of a Lot in and to the easement.

Merryhill also recorded a plat that depicted the location and dimensions of the easement. The easement runs 200 feet in length along the northern boundary line of the subject lots. It is 24 feet wide.

_____

[2] In the same instrument, Merryhill also granted certain easements to Fairfax County for the purpose of constructing and maintaining utilities, and operating emergency vehicles. Merryhill reserved the right to construct and maintain roadways over the easements, and to make any other use of the easements not inconsistent with the rights conveyed to Fairfax County. However, Merryhill agreed "not [to] erect any building or other structure, excepting a fence, on the easements without obtaining the prior written approval of [Fairfax] County." The fact that Merryhill retained the right to construct a fence on the easements granted to Fairfax County does not affect the issues in this appeal because those easements are, in some respects, different than the easement granted to the owners of the lots.

The parties to this litigation now own the lots previously owned by Merryhill. William H. Dempsey, III, and his wife Karen L. Holzberg (the Dempseys), were the first purchasers. They acquired Lots 2 and 3, Section B, in March 1992. These two lots were the only ones upon which a house was already situated. The other lots were unimproved at that time. During their negotiations with Merryhill, the Dempseys requested a restriction limiting the paved portion of the easement to a 15-foot strip along the northern edge of the easement. Merryhill agreed to the Dempseys' request, and in 1993, almost one year after the Dempseys purchased their lots, Merryhill recorded an instrument effecting the restriction. However, according to the terms of that 1993 document, the easement "remain[s] in full force and effect."

Next, Jeffrey D. Kolker and Pamela M. Kolker (the Kolkers), purchased Lot 1, Section B, in October 1994 from William R. Goetzen,[3] a developer who was a successor in interest to Merryhill. Finally, in July 1995, James W. Pizzarelle and his wife Georgie C. Nance (the Pizzarelles), acquired Lot 7-B, Section A, from Fairlane Development,

_____
[3] The record contains two different names for this individual. We will use the one found in a joint stipulation of facts.

3

Inc., also a successor in interest to Merryhill.  John Jordan represented Fairlane in that transaction with the Pizzarelles.

The four lots are contiguous and are bounded on the south by Dolley Madison Boulevard.  The Dempseys' property is the westernmost parcel and lies at the corner of Dolley Madison Boulevard and Buchanan Street.  The Kolkers own the next parcel, and the Pizzarelles own the easternmost parcel.  So, traveling eastward along the easement from Buchanan Street, one would first pass through the Dempseys' property, then the Kolkers', and finally the Pizzarelles'.

In an amended bill of complaint filed in February 1998, the Pizzarelles and the Kolkers alleged that the Dempseys are obstructing and interfering with the full use of the easement by virtue of certain fences, a rock wall, and bushes and trees that the Dempseys placed in the easement.[4]  The Pizzarelles and the Kolkers requested a declaration of their rights with regard to use of the easement for ingress and egress, as well as an injunction directing the Dempseys to remove all obstructions placed in

_____

[4] Originally, only the Pizzarelles instituted this action.  On motion of the Dempseys, the court ordered the Pizzarelles to add the Kolkers as necessary parties.  The Pizzarelles and the Kolkers then filed the amended bill of complaint.

4

or along the easement, and restraining the Dempseys from any further obstruction of the easement.  The Dempseys answered the bill of complaint and also filed two cross-bills, alleging certain violations of the provisions of the easement by the Kolkers and the Pizzarelles.[5]

At trial, the parties presented evidence through testimony, exhibits, and a joint stipulation of facts.  We summarize and review that evidence in the light most favorable to the Dempseys, the prevailing parties below.  Prospect Dev. Co., Inc. v. Bershader, 258 Va. 75, 80, 515 S.E.2d 291, 294 (1999).

Some of the trees and shrubs that constitute part of the obstructions in the 24-foot easement were first planted by the Dempseys after they purchased their lots.  Mr. Dempsey acknowledged that he planted several "seeders" approximately two to three feet within the easement along its southern border, but he testified that he did so with the permission of someone at Merryhill.

---

[5] The circuit court denied the relief requested in the cross-bills.  The Dempseys did not assign cross-error to that judgment, nor did they file a cross-appeal.  Accordingly, we will not address the evidence presented in support of those cross-bills.  See Rules 5:17(c) and 5:18.

A fence known as the south fence originated with a request from the Kolkers when they were negotiating the purchase of Lot 1. They asked "the people who sold [them] the house" to erect a fence along the southern boundary of the easement. Mr. Kolker testified that they "asked for the fence to delineate the driveway so it would look . . . nice as [they] drove in." Accordingly, Jordan and Goetzen advised the Dempseys about the Kolkers' request. The Dempseys agreed to the erection of the fence on the condition that it be placed no further than 20 feet from the back (the northern boundary) of their property, i.e. four feet inside the easement on its southern side, adjacent to the area where the Dempseys had planted the "seeders."

However, the fence was not built at the location specified by the Dempseys. Instead, it was erected along the southern boundary of the easement, approximately six inches inside the 24-foot area encompassed by the easement. Consequently, the Dempseys contacted Jordan and advised him that the fence was not situated at the location where they had agreed. The next day the fence was moved to the location where it now stands, approximately four to five feet inside the southern border of the easement.

6

Mr. Kolker testified that he did not give permission for the south fence to be moved to its present location, but he acknowledged that he saw the Dempseys measuring the area and knew that they had the fence relocated from its initial position.  However, Mr. Kolker stated that he trusted the builder to place the fence in the correct spot and did not protest because he wanted to be a good neighbor.  In fact, the Kolkers did not protest to anyone about the present location of the fence until after they were brought into this litigation as necessary parties.

The south fence is a wooden, picket-style fence.  The Dempseys have also erected a chain-link fence at the eastern end of the south fence, perpendicular to it, and on the boundary line between their property and the Kolkers' lot.[6]

When the Pizzarelles purchased Lot 7-B, they observed the south fence in its present location, and some trees and shrubs behind the fence.  Mr. Pizzarelle acknowledged at trial that he knew that Jordan, the person from whom he had

_____

[6] There is also another fence, called the north fence, that is situated approximately one foot inside the northern border of the easement.  That fence runs along the northern boundary of all the parties' lots.  The Kolkers and the Pizzarelles are not asking that the north fence be removed.

purchased the property, had built the fence.  He also remembered "Mr. Dempsey showing [him] the exact markings out there one day with Mr. Jordan [,] the builder."

Both Mr. Pizzarelle and Mr. Kolker testified with regard to the effect of the obstructions upon their use of the easement.  They expressed concern about whether they could convey good title to a 24-foot easement if they sold their respective lots.  Mr. Pizzarelle and Mr. Kolker also questioned whether emergency vehicles could gain access to their respective homes because the full 24 feet of the easement is not open for the purpose of ingress and egress. Finally, Mr. Pizzarelle stated that he had experienced difficulty in removing deep snow from the easement because of the limited amount of space on each side of the paved portion upon which to shovel the snow.  Mr. Pizzarelle described the south fence, the chain-link fence perpendicular to it, and the trees as a "permanent block to anyone getting through that portion of the easement."

Based on this evidence, the circuit court found that the Kolkers had requested that the south fence be erected, and then acquiesced when the builder moved the fence to a location deeper within the easement.  Those acts, according to the circuit court, established the Kolkers' intent to abandon a portion of the easement.  The court further found

that the Pizzarelles' predecessor in interest, upon erecting the south fence, also abandoned the portion of the easement south of that fence, thus barring the Pizzarelles from acquiring rights to that part of the easement. Alternatively, the circuit court found that, if there was neither acquiescence nor abandonment, the encroachment was insubstantial. Thus, the court denied injunctive relief to the Pizzarelles and the Kolkers. This appeal followed.

ANALYSIS

Our review of this case is guided by well-settled principles. "[W]hen a case is decided by a court without the intervention of a jury and a party objects to the decision on the ground that it is contrary to the evidence, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. "It is axiomatic that a chancellor's finding on conflicting evidence, heard ore tenus, will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Ivy Constr. Co. v. Booth, 226 Va. 299, 301, 309 S.E.2d 300, 301 (1983) (per curiam) (citing Rochelle v. Rochelle, 225 Va. 387, 393, 302 S.E.2d 59, 63 (1983)). Conversely, "[a] judgment or decree that is plainly wrong, or without evidence to support it, cannot be

9

allowed to stand." Malbon v. Davis, 185 Va. 748, 757, 40 S.E.2d 183, 187 (1946).

On appeal, the Pizzarelles and Kolkers contend that the trial court's finding of abandonment is contrary to the evidence because the Pizzarelles' predecessor in interest, as well as the Kolkers, lacked the requisite intent to abandon the easement and because there had not been a sufficient lapse of time for an abandonment to occur. They also argue that the circuit court erred by concluding that the encroachment was insubstantial and thus did not justify an award of injunctive relief. Finally, they assert that the circuit court abused its discretion by re-writing the terms of the easement and forcing a de facto modification of the easement upon the Pizzarelles and the Kolkers.

We will first address the issue of abandonment and the principles of law applicable to it.

> [M]ere non-use[] of an easement created by deed, for a period however long, will not amount to abandonment. In addition to the non-use[,] there must be acts or circumstances clearly manifesting an intention to abandon; or an adverse use[] by the owner of the servient estate, acquiesced in by the owner of the dominant estate, for a period sufficient to create a prescriptive right.

Lindsey v. Clark, 193 Va. 522, 525, 69 S.E.2d 342, 344 (1952) (citing Watts v. C.I. Johnson & Bowman Real Estate Corp., 105 Va. 519, 525, 54 S.E. 317, 319 (1906)). The

10

party claiming abandonment of an easement, in this case the Dempseys, has the burden "to prove [such abandonment] by clear and unequivocal evidence." Robertson v. Robertson, 214 Va. 76, 82, 197 S.E.2d 183, 188 (1973) (citing Lindsey, 193 Va. at 525, 69 S.E.2d at 344).

With regard to the Kolkers, there is evidence to support the court's factual findings that the Kolkers asked that the south fence be erected and did not initially object to its relocation four to five feet deeper into the easement. However, when the Kolkers asked for a screening fence to be built, they believed that it would be erected along, or within six inches of, the southern boundary of the easement, not four to five feet inside the easement. Thus, the mere fact that they requested the fence is not "clear and unequivocal evidence" of an intent to abandon part of the easement for the purpose of ingress and egress. Robertson, 214 Va. at 82, 197 S.E.2d at 188. The Kolkers' subsequent failure to object when they saw the fence being relocated is likewise not "unequivocal" evidence of an intent to abandon, as it is not "free from uncertainty." Blacks Law Dictionary 1529 (7th ed. 1999). Rather, it is "equivocal," since other evidence indicates a contrary intent. For example, Mr. Kolker testified that they trusted the builder to locate the south fence at the

correct spot, and Jordan relocated the fence deeper into the easement at the sole direction of the Dempseys. Additionally, the circuit court found that Jordan was not acting as the Kolkers' agent at that point, and that finding is not the subject of any assignment of cross-error.

As to the Pizzarelles, the circuit court concluded that their predecessor in interest, Jordan, had abandoned part of the easement by erecting the south fence at the spot specified by the Dempseys. However, we do not agree.

Even though Jordan (and Goetzen since he also intitially approached the Dempseys about the fence and sold Lot 1 to the Kolkers), moved the south fence to a location deeper into the easement, the area on the south side of that fence was still open and useable for some forms of ingress and egress. That situation changed when the Dempseys connected their chain-link fence to the eastern end of the south fence. At that time, the Dempseys completely blocked the free and continuous enjoyment of the easement by the Kolkers and the Pizzarelles. Yet, there is no evidence in the record that anyone agreed to the erection of the chain-link fence. Thus, we conclude that the evidence regarding the intent of the Pizzarelles' predecessor in interest is also "equivocal" and therefore

12

insufficient to establish an intent to abandon.  Robertson, 214 Va. at 82, 197 S.E.2d at 188.

However, the Dempseys contend that it is inconceivable that Jordan would have erected the south fence, then relocated it at the Dempseys' insistence, and still intended all the while to retain, and subsequently convey to the Pizzarelles, the right to demand that the fence be removed.  In making this argument, the Dempseys point to the absence of any testimony from Jordan and Goetzen with regard to their intent in erecting the south fence.  We are not persuaded by this argument because it overlooks the fact that the Dempseys had the burden of proving abandonment, id., and they were the owners who completely blocked the easement from all forms of ingress and egress by erecting the chain-link fence.

The Dempseys also assert that the facts in the present case are remarkably similar to those in Magee v. Omansky, 187 Va. 422, 46 S.E.2d 443 (1948), where this Court found an abandonment.  However, we find that case distinguishable from the present one.  In Magee, the primary questions presented were first, what easement, if any, did the plaintiffs acquire; and second, if the plaintiffs had an easement, had it been abandoned.  In answering the first question, this Court found that the plaintiffs had not

13

acquired any easement because they failed to show that the street in question was servient to their lots in a subdivision. Id. at 429, 46 S.E.2d at 447. Nevertheless, the Court, in dicta, considered the question of abandonment. The facts in Magee with regard to the abandonment issue established a long period of non-use of the street; the placement of iron stakes in the street; the acts of the parties and their predecessors in interest in allowing the street to grow up in large trees, dense honeysuckle, and bushes; appropriation of the western ten feet of the street into the lots bordering the street; and erection of a woodshed on the eastern part of the street. Id. at 429-430, 46 S.E.2d at 447-48. We concluded that, even if easement rights had been acquired, those facts supported the trial court's finding of abandonment. Id. at 430, 46 S.E.2d at 448. We do not believe that the facts in the present case are comparable to those in Magee.

"Abandonment is a question of intention[,]" and it must be established by "clear and unequivocal evidence." Lindsey, 193 Va. at 525, 69 S.E.2d at 344. We do not find such evidence in the record that either the Kolkers, or Jordan and Goetzen, intended to abandon approximately four to five feet of the easement from all ingress and egress. Instead, we believe that the evidence with regard to the

14

present location of not only the south fence, but also the Dempseys' chain-link fence, and the trees and shrubs, reflect the Dempseys' intent to adversely use part of the easement for a purpose other than ingress and egress.

This conclusion does not end our discussion. As previously noted, the circuit court made an alternative finding that, in the absence of abandonment, the encroachment was insubstantial and did not warrant injunctive relief. We do not agree with the circuit court because the obstructions in the easement are a material encroachment on the dominant owners' rights.

"The use of an easement must be restricted to the terms and purposes on which the grant was based." Nishanian v. Sirohi, 243 Va. 337, 339, 414 S.E.2d 604, 606 (1992) (citing Robertson v. Bertha Min. Co., 128 Va. 93, 104, 104 S.E. 832, 835 (1920)). Thus, injunctive relief is available when an easement is being used for a purpose other than that originally granted. Nishanian, 243 Va. at 339, 414 S.E.2d at 606. Otherwise, a new and different use of an express easement could be established by prescription, i.e., "a showing of adverse use under a claim of right, a use which is exclusive, continuous and uninterrupted and occurs with the knowledge of the land owner for at least twenty years." Id. (citing Martin v.

*Proctor*, 227 Va. 61, 64-65, 313 S.E.2d 659, 661 (1984); *Robertson*, 214 Va. at 81, 197 S.E.2d at 188).

To affirm the circuit court's denial of injunctive relief in this case would in effect allow the Dempseys to appropriate a portion of the easement and reduce a 24-foot easement to one of 19 to 20 feet in width. The Kolkers and the Pizzarelles acquired a 24-foot easement, and they are entitled to the free and continuous use and enjoyment of that 24 feet for the purpose of ingress and egress. The terms of the easement specifically guaranteed that right to them and further stated that no owner of a lot shall perform any act that interferes with that right.

Unlike some cases, the question here is not one of "reasonableness" or whether the easement is now "less useful or less convenient." *Willing v. Booker*, 160 Va. 461, 466, 168 S.E. 417, 418 (1933). The Dempseys portray the easement as not being "less useful" because vehicular traffic on the paved portion is not affected by the obstructions. However, the obstructions in the easement completely block all ingress and egress on the south side of the wooden fence.

Nor is this a case in which the equities should be balanced. For example, in *Mobley v. Saponi Corp.*, 215 Va. 643, 212 S.E.2d 287 (1975), a case upon which the Dempseys

16

rely, this Court affirmed the chancellor's denial of injunctive relief after balancing the equities. There, the evidence showed that no significant amount of the Mobley's lakefront, useable property was flooded when the level of the lake was raised. Also, their dock was no less usable, and the corporation had reserved a permanent easement within ten feet of the shoreline for the benefit of the lake. Id. at 646, 212 S.E.2d at 289-90. In the present case, a significant portion of the easement would be rendered unusable for ingress and egress if injunctive relief were denied.

Thus, we conclude that the circuit court's denial of injunctive relief, while a matter of discretion, was nevertheless plainly wrong in this case. See Blue Ridge Poultry and Egg Co., Inc. v. Clark, 211 Va. 139, 144, 176 S.E.2d 323, 327 (1970) (decision whether to grant or refuse injunction lies within sound discretion of chancellor and will not be disturbed on appeal unless decision is plainly wrong). For these reasons, we will reverse the judgment of the circuit court and remand this cause for entry of an injunction directing the Dempseys to remove the south fence and other obstructions that are within the 24-foot

easement.[7]  On remand, the circuit court shall also address the question whether the Dempseys should bear all the costs of removing the obstructions.

<u>Reversed and remanded</u>.

_____

[7] In light of our decision, we do not need to address the remaining assignment of error.  We also will not address the Dempseys' argument with regard to estoppel because they did not present that argument to the circuit court.  <u>See</u> Rule 5:25.  Similarly, they claim that the south fence and the trees adjacent to it are permissible, i.e., not an encroachment, under the terms of the easement when viewed in light of the 15-foot paving restriction.  Even though the circuit court concluded that the encroachment was insubstantial, it nevertheless found an encroachment.  The Dempseys did not assign cross-error to that finding.  <u>See</u> Rule 5:18.