COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Causey
Argued at Lexington, Virginia

JAMES WENZEL FORBES, ET AL.

OPINION BY
v.      Record No. 0212-22-3      JUDGE DORIS HENDERSON CAUSEY
SEPTEMBER 12, 2023

JASON W. CANTWELL

FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Edward K. Stein, Judge

Meredith L. Yoder (Trevor B. Reid; Parker, Pollard, Wilton &
Peaden, P.C., on briefs), for appellants.

John B. Simpson (MartinWren, P.C., on brief), for appellee.


This appeal involves an express easement to benefit land, the dominant estate, owned by

James Wenzel Forbes and Desirea Smolka Forbes ("the Forbeses"), burdening the land, the servient

estate, of Jason W. Cantwell ("Cantwell"). After a trial to interpret the terms of the easement and to

clarify, via declaratory judgment, the parties' rights under the easement, the Forbeses challenge

several of the circuit court's rulings. Cantwell assigns cross-error to one of the circuit court's

rulings. For the following reasons, we reverse and remand in part and affirm in part.

BACKGROUND[1]

Francis and Donna Cantwell owned land on Stoneview Circle in Lexington, Virginia. In

2005, they split their land into two portions—Lots 6 and 7. Francis and Donna Cantwell sold Lot 7

---

[1] "We summarize and review th[e] evidence in the light most favorable to [Cantwell], the
prevailing part[y] below." *Pizzarelle v. Dempsey*, 259 Va. 521, 525 (2000) (determining whether
encroachments within the easement area described in the deed needed to be removed).

to Greg Higgins. The deed conveying Lot 7 to Higgins ("Higgins deed") contained the following

easement, for the benefit of Lot 6, owned by Francis and Donna Cantwell:

> The Grantors do hereby RESERVE unto themselves, their heirs
> and successors in title, a 40[-]foot easement along the westerly
> boundary of Lot 7, for the purpose or [sic] providing ingress and
> egress over existing driveway, fencing and landscape buffer for the
> benefit of Lot 6; said easement being shown on the aforesaid plat.

No plat attached to the deed shows the easement. Lot 7 was foreclosed upon and bought by

Cantwell, the son of Francis and Donna Cantwell. Lot 6 was then foreclosed upon and bought

by the Huntsmans. The Huntsmans sold Lot 6 to the Forbeses, the current owners of Lot 6.

Cantwell remains the current owner of Lot 7. The Forbeses and Cantwell do not contest that

both Lot 6 and Lot 7 are subject to the easement in the Higgins deed. Cantwell owns the servient

estate. The Forbeses own the dominant estate.

Lots 6 and 7 are bound on their southern sides by Stoneview Circle, a public street. The

easement is located on the western side of Lot 7, where Lots 6 and 7 border each other. If one

stands on Stoneview Circle facing Lots 6 and 7, Lot 6 would be on the left, Lot 7 on the right,

and the easement between the two lots, on Lot 7. Although the Forbeses and Cantwell disagree

over the scope of the easement, they agree that the ingress/egress easement provides an "existing

driveway" from Lot 6 to Stoneview Circle.

The circuit court consolidated several claims between the Huntsmans[2] and Cantwell and

the Forbeses and Cantwell and held a trial to determine the scope of the easement, interpret the

express easement, and resolve the parties' claims. The Forbeses requested a declaratory

judgment clarifying the parties' rights under the easement. They also requested injunctive relief

directing Cantwell to remove fencing and gates within the easement area, prohibiting him from

---

[2] The original dispute over the easement was between the Huntsmans and Cantwell, but once the Huntsmans sold their lot to the Forbeses, the dispute continued between the Forbeses and Cantwell.

installing "any gates, fences, landscaping or plantings" and interfering with any such structures installed by the Forbeses. Although the Forbeses argued that the easement language was unambiguous, the circuit court ruled that the easement was ambiguous and permitted the introduction of parol evidence. This parol evidence included testimony from Francis Cantwell, the original drafter of the easement, about the intent and meaning of the fencing and landscape easement:

> [W]hat was important to us was that the buffer, that we maintain the privacy, because God forbid the Higgins decided to go into the logging business or just clear-cut the place, we would end up staring at this house, which it now was, and staring at neighbors. We would lose all of our privacy. And there was a little fence in there that we had had. It was a piece of two rails split, an[] old split-rail fence and had a couple of rosebushes on it. So I said, well, let's protect the existing fence, the existing landscape buffer, let's leave it there.

After hearing all the evidence, the court made the following rulings in its final order, relevant to this appeal:

1. That the easement for ingress and egress for Lot 6 . . . is located and configured as shown in the Plat attached hereto [the circuit court's order] as Exhibit "A" . . . [and] is hereby incorporated by reference.

2. That the landscape component[s] of the easement . . . extends forty feet (40') from the western boundary of Lot 7, as otherwise shown on [the attached Plat] and constitutes a negative easement which prevents the owner of Lot 7 from interfering with what was the then-existing landscape buffer, and Cantwell is hereby enjoined from such interference, but such Landscaping Easement does not give the owner of Lot 6 control of or the right to make any changes to any part of Lot 7 outside the Ingress/Egress Easement . . . and the Forbeses are so enjoined.

3. That the fencing component of the easement created by the [Higgins] deed . . . extends forty feet (40') from the western boundary of Lot 7, as otherwise shown on [the attached Plat] and constitutes a negative easement which prevents the owner of Lot 7 from interfering with what was the then-existing fencing, and Cantwell is hereby enjoined from

- 3 -

such interference, but such Fencing Easement does not give the owner of Lot 6 control of or the right to make any changes to any part of Lot 7 outside the Ingress/Egress Easement . . . and the Forbeses are so enjoined.

4. The claims of Cantwell seeking damages against [the] Huntsman[s] for, trespass, waste and/or nuisance with respect to the actions taken by the Huntsmans to regrade, gravel or otherwise improve the gravel driveway within the Ingress/Egress Easement are denied with prejudice.[3]

5. That the removal of trees and expansion of the driveway . . . outside of the Ingress/Egress Easement, constituted a trespass which was extensive and ongoing after they were given notice for which the Court awards Cantwell judgment for nominal damages in the amount of $5,000.00 against the Huntsmans.

6. That Cantwell is entitled to fence Lot 7 by erecting fencing within the boundaries of Lot 7, but he is not permitted to install gates at the entry of the Ingress/Egress Easement at Stoneview Circle or where the Ingress/Egress Easement is adjacent to the . . . garage on Lot 6. Cantwell is hereby ordered to remove such gates, if any, at either location.[4]

This appeal follows.

ANALYSIS

On appeal, the Forbeses argue that the circuit court erred in: determining that the easement language was ambiguous and admitting parol evidence, interpreting the deed to find that the ingress/egress easement was less than 40 feet wide, finding that the fencing easement constituted a negative easement, finding that the landscape easement constituted a negative easement, "failing to enjoin . . . Cantwell from maintaining and erecting fencing within the forty-foot easement area," making its factual determinations about the size of the existing

---

[3] This ruling in the final order followed its ruling from the bench that "it's clear under common law that the Huntsmans[,] having an easement for ingress and egress[,] have the right to maintain that easement so they can gravel it, they can grade it, and . . . they can[,] if necessary[,] change the grade of the easement to provide better ingress and egress."

[4] This ruling in the circuit court's final order followed its ruling from the bench that the gates did not meet the requirements under Code § 33.2-110.

- 4 -

driveway, and making rulings that, when taken together, "render[ed] the [ingress/egress] easement impassable by common motor vehicles." [5] On cross-error, Cantwell argues only that the circuit court erred in enjoining him from maintaining gates "along fencing on his own land at the entry of the access easement or where the access easement is adjacent to the 24-foot-wide garage on Appellants' property."

## I. Admission of Parol Evidence

### a. Standard of Review

"In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents." *Anderson v. Delore*, 278 Va. 251, 257 (2009). "We review de novo a circuit court's interpretation of words in a deed." *Marble Techs., Inc. v. Mallon*, 290 Va. 27, 33 (2015). "If the language in a deed creating an easement is unambiguous, courts should interpret the deed solely based on the deed's language." *Id.* "'Only when the language is ambiguous may a court look to parol evidence, or specifically, to the language employed in light of the circumstances surrounding the parties and the land at the time the deed was executed' in order to discern the parties' intent." *Id.* (quoting *Pyramid Dev., L.L.C. v. D & J Assocs.*, 262 Va. 750, 754 (2001)). When "the deed language does not state the object or purpose of the easement, the determination of the easement's scope 'is made by reference to the intention of the parties to the grant,' ascertained from the circumstances pertaining to the parties and the land at the time of the grant." *Anderson*, 278 Va. at 257 (quoting *Waskey v. Lewis*, 224 Va. 206, 211 (1982)). "[N]o use may be made of the easement which is different from that established at the time of its creation and which imposes an additional burden upon the servient estate." *Hayes v. Aquia Marina, Inc.*, 243 Va. 255, 258-59

---

[5] Because we reverse the circuit court's ruling restricting the ingress/egress easement to only a portion of the 40 feet, we do not address the Forbeses' last two assignments of error related to the size of the driveway.

(1992). Instruments "creat[ing] an easement must be strictly construed, with any doubt being resolved against the establishment of the easement." *Burdette v. Brush Mountain Ests., LLC*, 278 Va. 286, 297 (2009) (quoting *Chesapeake & Potomac Tel. Co. of Va. v. Properties One, Inc.*, 247 Va. 136, 139 (1994)).

### b. The circuit court erred in admitting parol evidence to describe the size of the easement.

The Forbeses argue that the plain language of the deed provides an ingress/egress easement of 40 feet from the westerly boundary of Lot 7. We agree. The parties agree on appeal that the deed language provides an easement that is 40 feet wide.[6] And the deed is unambiguous regarding the size of the easement. It states that the size of the easement is 40 feet: "[t]here is reserved for the benefit of the owners of Lot 6 . . . a 40[-]foot easement along the westerly boundary of Lot 7, for the purpose of providing ingress and egress over existing driveway." We hold that the deed provides that the easement is 40 feet wide. *See Snead v. C & S Properties Holding Co., Ltd.*, 279 Va. 607, 610, 615 (2010) (holding that the language "reserve[d] . . . for ingress and egress . . . across the northernmost 60' of the parcel hereby conveyed, and shown in said plat as '60' Easement,'" created a right-of-way easement 60 feet wide). Therefore, the circuit court erred in admitting parol evidence to describe the size of the easement.

### c. The circuit court did not err in admitting parol evidence about the scope of the fencing and landscape easement.

The Forbeses argue that the circuit court erred by finding that the deed established a negative easement for the purposes of a fencing and landscape buffer. We agree. However, the circuit court did not err in admitting Francis Cantwell's testimony about the meaning of words "fencing and landscape buffer" because the scope of the easement was ambiguous. Although the

---

[6] Although the parties agree about the easement's size, they disagree about the easement's scope and purpose.

Forbeses maintain that "'fencing' and 'landscaping buffer' are common phrases with established meanings," these terms are ambiguous in the context of an easement, as these phrases are not defined in any prior Virginia case. The Forbeses cite no caselaw to bolster their argument that this language is unambiguous.

The easement states that "[t]here is *reserved* for the *benefit* of the owners of Lot 6 and their heirs and successors in title, a 40[-]foot easement . . . for the purpose of providing . . . fencing and landscape buffer for the benefit of Lot 6." (Emphases added). The language "reserved for the benefit of the owners of Lot 6" and "for the benefit of Lot 6" clearly provides the affirmative right to the owners of Lot 6 to construct a fencing and landscape buffer within the 40-foot-wide easement area. Looking at the four corners of the deed, the meaning and scope of "fencing and landscape buffer" is ambiguous. Thus, we hold that the circuit court did not err in admitting parol evidence to determine the meaning and scope of these terms.[7]

    *d. The circuit court erred in finding that the deed contained a negative easement on Lot 7's land.*

When "the deed language does not state the object or purpose of the easement, the determination of the easement's scope 'is made by reference to the intention of the parties to the grant,' ascertained from circumstances pertaining to the parties and the land at the time of the grant." *Anderson*, 278 Va. at 257 (quoting *Waskey*, 224 Va. at 211). The only evidence provided about the meaning and intent of the drafting parties in reserving a fencing and landscape buffer was the testimony of Francis Cantwell, the grantor of the original deed

---

[7] The failure to include the "aforesaid plat" in the easement does not affect our conclusions that: (1) the plain language of the deed reserves an easement that is 40-feet wide for the purpose of ingress/egress by the Forbeses and maintenance of a fencing and landscape buffer by the Forbeses and (2) parol evidence is only necessary to determine the meaning of the words "fencing and landscape buffer." The parties clearly intended to include a plat showing the easement with the records, but mistakenly forgot to do so. And the parties do not contest that an easement exists, but only disagree over the scope of the easement.

containing the easement. In his testimony, he explained that his intent in reserving a fencing and

landscape buffer was to provide privacy to his house on Lot 6 from the house on Lot 7.[8]

Although the circuit court did not plainly err in accepting and relying on Francis

Cantwell's testimony, it erred when it applied the law to these facts and declared that the

"fencing and landscape buffer" constituted a negative easement.

> Negative easements, also known as servitudes, do not bestow upon
> the owner of the dominant tract the right to travel physically upon
> the servient tract, which is the feature common to all affirmative
> easements, but only the legal right to object to a use of the servient
> tract by its owner inconsistent with the terms of the easement.

*United States v. Blackman*, 270 Va. 68, 76 (2005). Affirmative easements, on the other hand,

permit the dominant estate "to use the land of another (the 'servient tract') in a particular manner

or for a particular purpose." *Id.*; *see also Irby v. Roberts*, 256 Va. 324, 329-31 (1998). In either

case, the servient estate may use the land "in ways not inconsistent with the uses granted in the

easement." *Walton v. Capital Land, Inc.*, 252 Va. 324, 327 (1996).[9]

---

[8] The Forbeses argue that the circuit court erred in relying on Francis Cantwell's testimony because, as the father of Cantwell—the appellee—he was an interested witness, making his testimony unreliable. However, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Brown v. Commonwealth*, 75 Va. App. 388, 413 (2022) (quoting *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002)). Here, Francis Cantwell's testimony about his intent in reserving a fencing and landscape buffer for his benefit as owner of Lot 6 is not inherently incredible. Thus, we defer to the circuit court's finding that his testimony was credible.

[9] Thus, when an easement grants the dominant estate the right to construct a structure within an area, specified by width, on the servient estate, clearly, the servient estate has no right to construct a similar structure within that area. *See Irby*, 256 Va. at 329-31 (holding that the easement reserved an area, specified by width, of the servient estate for construction of a pier by the dominant estate and that the servient estate gave up its riparian rights attached to the area). If an easement were to convey a parcel of land for *all* purposes, it would be more appropriately considered a transfer of interest in fee. *Id.* at 326.

There is no negative easement. Thus, the court's holding that the original easement constituted a negative easement is error. The easement does not place any prohibition on Cantwell; however, he must not interfere with the rights of the easement holders—the Forbeses. *See generally*, *Snead*, 279 Va. 607. The court compounded this error by failing to establish the scope of the fencing rights and landscaping buffering, which were affirmatively created by the easement. Given the ambiguous nature of the easement, the circuit court is compelled to outline these rights after hearing parol evidence. The injunction placed on Lot 7—Cantwell—is vacated. To the extent that Paragraph 3 of the circuit court's final order enjoins Lot 6—the Forbeses— from enjoying their easement, it, too, is vacated. The matter is remanded to the circuit court to establish the scope of the fencing and landscaping buffer, which inure to the benefit of Lot 6.[10]

---

[10] The concurrence/dissent argues that we are not permitted to order the circuit court to reopen the record on remand because no party has requested that we do so. However, we are permitted to do so when we deem the evidence in the record insufficient to resolve the legal issues before us. *See PS Bus. Parks, L.P. v. Deutsch & Gilden, Inc.*, 287 Va. 410, 422 (2014) (McClanahan, J., concurring in part and dissenting in part) (reversing and "remand[ing] for an evidentiary hearing that was never requested"). Although in *PS Business Parks* the majority based its sua sponte remand for an evidentiary hearing on the rationale that the plain language of the relevant statute required further factual findings, and here, there is no relevant statute requiring the same, common-law principles require that the circuit court take parol evidence to clarify the meaning of ambiguous terms in a written document. *Id.* at 421 ("[T]he plain language of Code § 8.01-565 necessitates a detailed inquiry into the 'debts and effects' of the judgment debtor's account during the garnishment period."); *Anderson*, 278 Va. at 257 ("In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents."); *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc.*, 287 Va. 425, 429 (2014) ("[W]hen a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties."). Here, we have already determined, and the concurrence/dissent agrees, that the terms of the fencing/landscaping component of the easement are ambiguous. The record is insufficient to determine the meaning and scope of the easement; otherwise we would have done so on appeal. *Marble Techs., Inc.*, 290 Va. at 33 ("We review de novo a circuit court's interpretation of words in a deed."). In these circumstances, it is proper to remand for further factual findings on this matter, even though no party has requested us to do so.

## II. Circuit Court's Determinations of the Rights of the Parties Under the Easement

### *a. General Legal Principles on Easements*

"An easement . . . is a privilege to use the land of another in a particular manner and for a particular purpose." *Brown v. Haley*, 233 Va. 210, 216 (1987). However, "it does not give the owner of the dominant estate an ownership interest in the servient tract." *Beach v. Turim*, 287 Va. 223, 228 (2014). "It creates a burden on the servient tract and requires that the owner of that land refrain from interfering with the privilege conferred for the benefit of the dominant tract." *Brown*, 233 Va. at 216. "Implicitly, . . . the landowner must part with those rights necessary to fulfill the intent of the grant." *Irby*, 256 Va. at 330. "[T]he servient landowner retains the right to use the land in ways not inconsistent with the uses granted in the easement." *Walton*, 252 Va. at 326-27.

"When an easement exists by express grant, its use must be confined to the terms and purposes of the grant." *Watts v. C.I. Johnson & Bowman Real Est. Corp.*, 105 Va. 519, 523 (1906). "[I]t must further be used in a reasonable manner and so as not unnecessarily to injure the rights of the other party. The extent of the use, where unlimited by the grant, must be governed by what is reasonable and customary in such cases." *Id.* at 523-24. What is reasonable and customary is what is necessary for the dominant estate's proper enjoyment of the easement. Thus, when an easement is granted: it must be used in a reasonable manner confined to the terms and purposes of the grant; it must not unnecessarily injure the rights of the other party; its use must be reasonable; and its use must be necessary for its reasonable and proper enjoyment.

Here, Cantwell owns the servient tract and the Forbeses own the dominant tract. The Forbeses have been granted a privilege to use the land of Cantwell, within the limited necessary and reasonable bounds contained within the easement grant. Because the Forbeses have the right

to use the land of Cantwell, Cantwell must part with those rights necessary to fulfill the intent of the easement.

### b. Standard of Review

On appeal, the Forbeses argue that the circuit court erred in declining to award them injunctive relief for the removal of Cantwell's fencing in the easement and that he "be permanently enjoined against future obstruction of any right of the [e]asement." Cantwell asserts that the circuit court erred in ruling that he could not maintain gates within the easement area.

"Because the circuit court heard the evidence ore tenus, its factual findings are entitled to the same weight as a jury verdict, and [we are] bound by [its] findings of fact unless they are plainly wrong or without evidence to support them." *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017) (alterations in original) (quoting *Jean Moreau & Assocs. v. Health Ctr. Comm'n*, 283 Va. 128, 142 (2012)). "This Court reviews pure questions of law de novo." *Beach*, 287 Va. at 228. Additionally, "the decision to grant or deny an injunction is within the discretion of the trial court, and it will not be disturbed on appeal unless it is plainly wrong." *Snead*, 279 Va. at 613.

### c. Right to Construct Fences

"[W]here a reservation is of a certain width, that width cannot be encroached upon." *Id.* at 615 (quoting *Willing v. Booker*, 160 Va. 461, 465 (1933)). Prohibited obstructions include fencing. *See Pizzarelle v. Dempsey*, 259 Va. 521, 526, 532 (2000) (holding that, where the easement language granted a 24-foot easement for right of way, fencing within 4 to 5 feet of the easement area, along with "other obstructions that are within the 24-foot easement," had to be removed). When the easement is for a right of way, even if the easement area contains an existing driveway/roadway whose width does not encompass the entire width of the easement, the entire width specified in the easement must remain unobstructed. *See Snead*, 279 Va. at 609,

611, 615-16 (holding that the servient tenants had to remove obstructions within the 60-foot easement for right of way, even where the 12-to-15-foot-wide gravel road remained unobstructed). But while the easement area must remain unobstructed, "[o]ne who owns in fee a lane across the lands of another cannot object to the building of a line fence." *Willing*, 160 Va. at 467. However, in constructing the line fence, the servient tenant "must not make the easement 'less useful or less convenient.'" *Id.*

*Pizzarelle* and *Snead* prohibit obstructions within the easement area. Therefore, any fencing constructed by Cantwell that remains within the area 40 feet from the western boundary of Lot 7 (the easement) must be removed. Accordingly, the circuit court's denial of the Forbeses' injunction requesting removal of Cantwell's fences *within* the easement area was error. Cantwell may, however, leave any existing line fence or construct new line fences outside the 40-foot easement area—at the boundaries between his property and the Forbeses' property—to the extent that it does not interfere with the Forbeses' enjoyment of their easement.

#### d. Right to Construct Gates

"The right to erect the division fence necessarily carries with it the right of" the owner of the servient estate "to erect the gate therein which is solely for [the dominant tenant]'s use and convenience." *Good v. Petticrew*, 165 Va. 526, 535 (1936). Code § 33.2-110 defines the requirements that a gate across a right-of-way easement must meet: "[a]ny person owning land over which another or others have a private road or right-of-way may, except when it is otherwise provided by contract, erect and maintain gates across such roads or right-of-way at all points at which fences extend to such roads on each side thereof." In *Ridgwell v. Brasco Bay Corp.*, 254 Va. 458 (1997), the Supreme Court interpreted Code § 33.1-202, a predecessor of

Code § 33.2-110, which contains language identical to the current statute.[11]  In *Ridgwell*, the

servient estate contained a 50-foot-wide right of way leading to a public road, for the benefit of

the dominant estate.  *Id.* at 460.  The Court concluded that the servient tenants could place a

50-foot-wide gate separating right of way from the public road.  *Id.* at 461-62.  The statute

prohibited any smaller gate because a smaller gate would "obstruct[] [the dominant tenant]'s full

use of its 50-foot right of way."  *Id.* at 461.  Thus, the servient tenants' "36-foot-wide gate" had

to be removed, but the Supreme Court dissolved the injunction "preventing them from erecting"

any gate, as a 50-foot-wide gate would "compl[y] with Code § 33.1-202."  *Id.* at 461, 463.

Additionally, a gate placed across a right of way must remain unlocked and must be able to "be

easily opened and closed."  *Craig v. Kennedy*, 202 Va. 654, 660 (1961); *see Ridgwell*, 254 Va. at

462 n.* ("The Ridgwells do not have a right to maintain a locked gate once they can demonstrate

they have complied with the terms of the statute.  Nothing in Code § 33.1-202 provides such a

right." (citing *Craig*, 202 Va. at 660)).

 The circuit court found that Cantwell's gates impeded the Forbeses' use of the easement

and were placed to impede use of the easement.  It stated: "it's clear that that gate serves no

useful purpose to Mr. Cantwell. . . .  [Q]uite frankly, that gate serves one purpose . . . to interfere

with the Forbes[es]' use of their property.  I think that's exactly why Mr. Cantwell put it up

 . . . ."  The evidence at trial supports this finding.  The circuit court heard evidence that the gates

did not appear on the property until 2019 and that the police were regularly called when a gate

was left open.  Cantwell's testimony also supports this finding.  Cantwell testified that he erected

the gates "due to the water company[, t]he Huntsmans' use of excessive speed where they would

---

[11] Code § 33.1-202 provided that "[a]ny person owning land over which another or others
have a private road or right-of-way may, except when it is otherwise provided by contract, erect
and maintain gates across such roads or right-of-way at all points at which fences extend to such
roads on each side thereof."  *Ridgwell*, 254 Va. at 461 (alteration in original).

drive in and out on camera at high speeds[,] . . . [and] the fact I had a lot of strange cars come down my driveway on camera." Given the evidence, the circuit court was not plainly wrong in enjoining Cantwell from erecting the current gates along the ingress/egress easement.

We affirm the circuit court's ruling to the extent that it ruled that Cantwell is prohibited from maintaining gates within the 40-foot-wide easement area and to the extent that it enjoined the use of Cantwell's *current* gates, do not comply with Virginia law. However, Code § 33.2-110 permits Cantwell to install gates in compliance with the statute, which are "solely for [the dominant tenant]'s use and convenience," *Good*, 165 Va. at 535, and which must remain "unlocked" and must be able to "be easily opened and closed," *Craig*, 202 Va. at 660.

CONCLUSION

For the reasons stated above, we hold that the circuit court erred in holding that the size of the easement was ambiguous but did not err in holding that the scope of the easement was ambiguous. Thus, we affirm the circuit court's admission of parol evidence, as the meaning and scope of "existing driveway" and "fencing and landscape buffer" was ambiguous. We also hold that the circuit court erred in holding that the deed created a negative easement on Lot 7's land, as the deed and properly admitted parol evidence demonstrated that an affirmative easement existed for the benefit of Lot 6, over Lot 7's servient tract. Furthermore, the circuit court erred in failing to enjoin Cantwell from erecting fences within the 40-foot easement, but it did not err in allowing Cantwell to retain line fencing. Finally, the circuit court did not err in enjoining Cantwell's erection and maintenance of his current gates. The issue of Cantwell's erection of new or different gates is remanded to the circuit court.

Thus, we affirm in part and reverse in part. This matter is remanded to the circuit court for a hearing and determination of the parties' specific rights under the easement, for

- 14 -

modification of the injunctions concerning the Forbeses' and Cantwell's use of the easement, and for recordation of a new plat, consistent with this opinion.

*Affirmed in part, reversed and remanded in part.*

Malveaux, J., concurring in part, dissenting in part, and dissenting from the instructions on remand.

I agree with the majority that the circuit court did not err in admitting parol evidence concerning the scope of the fencing and landscape easement and also did not err in ruling that Cantwell was prohibited from installing gates to connect his boundary fences. I also agree with the majority that the circuit court did err in finding that the grant of an easement for a fencing and landscape buffer in the deed constituted a negative easement and erred in denying the Forbeses' injunction requesting removal of Cantwell's fences within the easement area. However, because I would hold that the circuit court did not err in admitting parol evidence to determine the size of the ingress/egress easement, I respectfully dissent from Section I.b. of the majority opinion.

The deed itself provides that the easement granted to Lot 6 is "a 40 foot easement along the westerly boundary of Lot 7." This language describes the size of the entire easement, and this determination is not at issue. Instead, the parties disagree as to the size of the ingress and egress easement specifically provided for in the deed. The Forbeses argue that the deed provides an ingress and egress easement for the entire 40 feet from the westerly boundary of the Lot 7 area. However, based on the plain language of the easement deed, I disagree.

The deed states the easement is reserved for "the purpose or [sic] providing ingress and egress over *existing* driveway." (Emphasis added). The language of the deed clearly provides a specific ingress and egress easement over the existing driveway, not over the entire 40-foot easement. This conclusion is supported by two prior decisions of our Supreme Court, *Snead v. C & S Properties Holding Co., Ltd.*, 279 Va. 607 (2010), and *Pizzarelle v. Dempsey*, 259 Va. 521 (2000). In both *Snead* and *Pizzarelle*, the Supreme Court found that a dominant estate is "entitled to the free and continuous use and enjoyment" of an entire easement "for the purpose of ingress and egress." *Snead*, 279 Va. at 614-15 (citing *Pizzarelle*, 259 Va. at 531). It found that

- 16 -

when a servient estate erects fencing that impedes access to part of an easement, this fencing is "a material encroachment on the dominant owners' rights" to ingress and egress, as an easement's reservation of a certain width "cannot be encroached upon." *Id.* at 615-16. However, in both cases, the easement for ingress and egress was not confined to a specific road. Rather, in *Snead*, the entire 60-foot easement was reserved "as a means to reach the National Battlefield Park Road." *Id.* at 610. Similarly, in *Pizzarelle*, the entire 24-foot easement was reserved "exclusively for the purpose of ingress and egress to the Lots." 259 Va. at 524. By contrast, here, the easement at issue is confined to the "existing driveway" for purposes of ingress and egress.

Unlike *Snead* and *Pizzarelle*, the easement is confined. As such, the circuit court was correct in admitting parol evidence to determine the width of the existing driveway, as the deed limited the easement to ingress and egress over the driveway without specifying its width.

I also dissent from the directions on remand provided by the majority opinion as outlined in Section I.d., the portion of the opinion discussing the circuit court's finding that the language regarding the fencing and landscaping buffer described in the deed created a negative easement. The majority opinion holds that the circuit court did not err in admitting parol evidence about the scope of the fencing and landscape easement, and it then holds that the court subsequently erred when it found that the fencing and landscape buffer constituted a negative easement. I agree with these determinations. However, the majority then goes beyond the holdings of the circuit court and concludes that the court erred by "failing to establish the scope of the fencing rights and landscaping buffering" and therefore must "outline these rights after hearing parol evidence." For several reasons, I disagree that these are proper instructions to give the circuit court on remand.

First, to the extent the circuit court's holding was based on its erroneous view that the fencing and landscaping buffer was a negative easement, it will have the opportunity to correct this in an order upon remand. Thus, any issue regarding the lack of specificity about the scope of the fencing and landscaping buffering rights can be addressed by the court in that order after it reconsiders its holding.

Second, the parties already had the opportunity to present parol evidence on this issue and did so. The parol evidence, in the form of Francis Cantwell's testimony, was that the intent of this easement was to protect against the owners of Lot 7 from removing or damaging the existing fencing and landscaping that served as a privacy buffer benefitting Lot 6. Here, the circuit court erred when it determined that the language of the deed created a negative easement. However, that does not mean that on remand the court must take new evidence; rather, it may view the evidence presented at trial and use those facts to determine the rights of the parties based on our holding that the deed did not create a negative easement.[12]

Third, as an appellate court, we are limited to reviewing errors of the circuit court, as noted by the parties before this Court in their assignments of error. "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1); *see also Bissell v. Commonwealth*, 199 Va. 397, 400 (1957) (noting that Virginia appellate courts "sit[] to review and correct errors of trial courts, and in exercising this jurisdiction . . . are limited to the record of the proceedings which have taken place in the trial court"). The Forbeses' assignments of error do not assert that the circuit court erred in failing to hold a post-trial hearing to obtain additional parol evidence to ascertain the rights of the parties regarding the fencing and landscaping buffer.

---

[12] The parties themselves will have the opportunity on remand to ask the circuit court to reopen the record if necessary. *See generally Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013) (noting that decisions to reopen the record are typically within the purview of the circuit court).

Indeed, they have not asked this Court to order that the record be reopened on remand. Because the lack of sufficient parol evidence was not an assigned error by either party, this Court should not sua sponte order the circuit court to conduct another hearing in order to obtain additional parol evidence.

For these reasons, I respectfully dissent as to the remand directive in this case.[13]

---

[13] The majority cites *PS Business Parks, L.P. v. Deutsch & Gilden, Inc.*, 287 Va. 410 (2014), in support of its conclusion in this case that we should remand to the circuit court for it to reopen the record and conduct another evidentiary hearing. Based on the holding of *PS Business*, I would not hold that this Court is completely without the authority to remand a case to a circuit court to conduct an evidentiary hearing; rather, I would only hold that it is inappropriate to do so in this specific case because the parties had the opportunity to present parol evidence at trial and did so. In *PS Business*, the circuit court failed to conduct an inquiry required by Code § 8.01-565 as to a garnishee's indebtedness to a judgment debtor over a garnishment period. *Id.* at 421. In that case, our Supreme Court remanded to the circuit court to "conduct a detailed inquiry" into the garnishee's indebtedness after the circuit court failed to conduct this statutorily mandated inquiry. *Id.* at 422. Here, there is no statutory mandate that the circuit court ignored, and thus *PS Business* is not dispositive as to whether this Court should remand to the circuit court for an additional evidentiary hearing.