## Richmond

IVY CONSTRUCTION COMPANY

V.

WAYNE B. BOOTH, d/b/a BAT MASONRY COMPANY

December 2, 1983.

Record No. 810711.

Present: All the Justices.

*David Craig Landin (John D. Epps; McGuire, Woods & Battle,* on briefs), for appellant.

*J. Michael Gamble (Pendleton & Gamble,* on brief), for appellee.

PER CURIAM.

The sole question presented in this mechanic's lien case is whether the record contains credible evidence to support the chancellor's finding as to the terms of the contract between the parties. Finding the evidence sufficient, we affirm.

In 1978, the owners and developers of the Wintergreen ski resort in Nelson County were engaged in the construction of three condominium projects on their property. The projects were known as Highland Oaks, White Oak Phase I, and White Oak Phase II. Ivy Construction Company, the appellant, was general contractor on all three projects. Ivy asked Bat Masonry, the appellee, to bid on the masonry work required for Highland Oaks and White Oak Phase II. White Oak Phase I had previously been subcontracted to another masonry company with which Ivy was "experiencing difficulty."

A letter from Ivy to Bat, dated December 20, 1978, described White Oak Phase II as a project containing twenty-eight units and asked Bat to bid for the work. Unknown to Bat, the owners of Wintergreen decided to cut the project back to sixteen units. They retained an option to increase the project to twenty-eight units by giving Ivy notice of their decision to so increase it by May 1, 1979.

Bat, after conferring with Ivy as to the work required, submitted a bid of $84,500.00 for the masonry work on White Oak Phase II. Ivy accepted the bid and prepared a written contract. The contract contained the figure $84,500.00, but was silent as to the number of units to be built. Both parties signed the contract,

and Bat began work. After completing work on sixteen units, Bat ceased operations and demanded final payment.

Wintergreen, in the meantime, exercised its option to build all twenty-eight units, and so advised Ivy. Ivy contended that Bat's contract covered all twenty-eight units and demanded that Bat complete the remaining twelve units. Bat contended that it had contracted for only sixteen units and refused to work on the additional twelve units unless a new contract were made covering twelve more units. Ivy engaged another masonry contractor for the work on the additional twelve units and deducted the cost thereof from the balance due Bat.

Bat perfected a mechanic's lien and brought this suit to enforce it. The owners filed a bond pursuant to Code § 43-70, causing the real property to be released from the lien, whereupon they were dismissed as defendants. The trial court heard evidence *ore tenus* and found that the contract of the parties contemplated the construction of sixteen units, that Bat had fully performed, and that Bat was entitled to judgment in the amount it claimed against Ivy. Ivy appeals.

The evidence as to the circumstances surrounding the formation of the contract between Ivy and Bat was convoluted, confusing, and conflicting. It is axiomatic that a chancellor's finding on conflicting evidence, heard *ore tenus*, will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Rochelle* v. *Rochelle*, 225 Va. 387, 393, 302 S.E.2d 59, 63 (1983). Code § 8.01-680. A recital of a relatively small part of the evidence suffices to show that the record supports the chancellor's finding.

Palmer, Bat's estimator, testified that in December 1978 he received a set of plans from Ivy which was unclear as to the number of units to be built in White Oak Phase II. Ivy's letter soliciting a bid had referred to units, but the plans showed four "clusters." Palmer said that he called Ivy and talked to someone he believed to be Wayne Coleman, Ivy's project manager at Wintergreen, and was told to delete cluster four on the plans. This left three clusters of six units each. Thinking he was dealing with eighteen units, Palmer arrived at an estimate of $89,861.00, which he conveyed to Wayne Booth, Bat's president. For competitive reasons, Booth reduced Bat's bid to $86,760.00 and transmitted that figure to Ivy. Coleman later called Booth and told him he thought Ivy would agree to subcontract both the Highland Oaks and White

Oak Phase II projects to Bat if the bids could be reduced slightly. Booth then revised the White Oak bid to $83,760.00 and the Highland Oaks bid to $84,000.00.

On February 20, 1979, Ivy wrote to Bat, stating "Ivy . . . shall award the masonry sub-contract for the above referenced projects to Batt [sic] Masonry." The letter further advised Bat that the owners of Wintergreen had only committed to sixteen of the twenty-eight units in White Oak Phase II, with an option, until May 1, 1979, to call for building the remaining twelve units. The letter also told Bat that the masonry contractor who had been working on White Oak Phase I desired to be relieved and suggested that Bat might wish to bid on the twelve uncompleted units in Phase I "which would bring the total of the White Oak contract back to a minimum of 28, even if the option is not exercised." The letter acknowledged that there would have to be price adjustments for the cold weather season then existing and asked Bat to submit a new bid on this basis.

Booth testified that he had no desire to undertake completion of the unfinished work in Phase I and did not reply to Ivy's letter of February 20. On April 16, Coleman, of Ivy, wrote to Palmer, of Bat, stating:

> Re:  White Oak Condominiums
>      Wintergreen, Va.
>
>      . . .
>
> Another set of plans for this project is due you with this letter via - UPS.
>
> The contract has been drawn for 16 units in lieu of the original 28. The cluster breakdown is as follows:
>
> 1 - 6 unit cluster
> 2 - 4 unit cluster
> 1 - 2 unit cluster
>
> All units are 2 bedroom.
>
> Please forward your revised quote as soon as possible.
>
> We anticipate masonry starting in 2 ½ to 3 weeks. Thank you.

Palmer testified that he received the revised plans a few days later and that he and Thomas Manley, Bat's vice-president, went to Wintergreen on May 7 to inspect the site and to go over the plans with Ivy's representatives. After verifying the required foundation depths, Palmer arrived at a revised estimate of $84,500.00 for the sixteen units. Manley communicated this figure to Ivy by a telephone call to Coleman.

About May 15 Coleman asked Manley why Bat had not yet begun work on White Oak Phase II. Manley replied that Bat had not yet received a contract on the job. A few days later, a written contract arrived in the mail at Bat's office. The contract had been prepared by Ivy and signed on Ivy's behalf by its president. Although it had a typed date of April 1, 1979, it contained Bat's most recent bid price of $84,500.00, which had been arrived at on May 7, when both parties were contemplating the construction of sixteen units. It described the work to be done only as "White Oak, Phase II - in accordance with the Drawings and Specifications prepared by Mr. Bill Atwood [of] Robert Vickory and Associates." No plans, drawings, or specifications were attached to the contract. Booth signed the contract as Bat's president, and Bat completed sixteen units in reliance thereon.

This evidence, and the inferences fairly drawn therefrom, furnish ample support for the chancellor's finding that the parties contracted for the construction of sixteen units, that Bat had fully performed, and that Bat was entitled to judgment in the amount claimed. For this reason the decree appealed from will be

*Affirmed.*