PRESENT: Keenan,[1] Koontz, Lemons, Goodwyn, and Millette, JJ.,
and Carrico and Lacy, S.JJ.

JANE F. SNEAD, ET AL.

                                                OPINION BY
v.          Record No. 090524        JUSTICE DONALD W. LEMONS
                                                April 15, 2010
C&S PROPERTIES HOLDING
COMPANY, LTD., ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
              William H. Ledbetter, Jr., Judge designate

    In this appeal, we consider whether the trial court erred

when it denied the injunctive relief sought by Jane F. Snead,

Douglas and Bonnie McWhirt, and Snead Family Farm, LLC

(collectively, "Snead") against C&S Properties Holding Company,

Ltd. ("C&S Properties") and Sylvia Properties, L.C. ("Sylvia

Properties").[2]

                    I.  Facts and Proceedings Below

    Snead filed a complaint seeking permanent injunctive

relief against C&S Properties.  Snead alleged that C&S

Properties had "erected a chain-link fence, planted and removed

certain trees, shrubs and/or bushes, placed certain signage,

and installed rip-rap [("the Improvements")], within the

bounds" of "a 60' ingress and egress easement" ("Easement")

---

[1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
12, 2010.
[2] After Snead's petition for appeal was granted, but prior
to our resolution of the case, Sylvia Properties and Snead

along the northern boundary of the property owned by C&S Properties over which Snead had a right of way.[3]  Snead further alleged that the Improvements "encroache[d] upon and obstruct[ed] the Easement," "interfere[d] with, limit[ed] and restrict[ed Snead's] quiet and peaceable possession and full and free enjoyment or use of the Easement," which use constituted a "breach of the covenant made by C&S Properties." Finally, Snead alleged that the Improvements "render[ed] a portion of the Easement unusable and impassable by [Snead, and the denial] of injunctive relief would permit a taking of a portion of the Easement."

Snead requested that the trial court:

(1) award them permanent injunctive relief prohibiting [C&S Properties] from interfering and obstructing [Snead's] use and enjoyment of the Easement, (2) order and require [C&S Properties] to remove all obstructions from the Easement, including but not limited to the chain-link fencing, new/immature trees and bushes, signage, and rip-rap that obstruct and encroach upon a portion of the Easement, (3) award them compensatory damages in the amount of $50,000.00, punitive damages in the amount of $50,000.00, nominal damages, and their costs, including attorney's fees on this behalf expensed, and (4) order such other and further relief as to equity may seem meet and the nature of this case may require.

settled the matters in controversy.  Pursuant to Snead's motion, we entered an order dismissing Sylvia Properties.

2

In its answer, C&S Properties admitted that the Easement "is an easement across property described in the Complaint and 'serving' in a legal sense, land owned by Snead Family Farm, LLC." C&S Properties denied the balance of Snead's other material allegations. On September 15, 2008, the trial court held an ore tenus hearing, received exhibits including deeds, plats and photographs of the subject property, and, with counsel, "took a view of the property."

The Easement was created by a 1971 deed between Emmett C. Snead, Sr., Emmett C. Snead, Jr. and Jane F. Snead as grantors, and Emmett C. Snead Sr., Emmett C. Snead, Jr., Douglas C. McWhirt, and Bonnie McWhirt as grantees ("the 1971 Deed"). In the 1971 Deed, the grantors

> reserve[d] unto themselves, their heirs, devisees, personal representatives, successors and assigns, for ingress and egress to and from other parcels of real estate they jointly or severally own or have interest in, across the northernmost 60' of the parcel hereby conveyed, and shown in said plat as "60' Easement", as a means to reach the National Battlefield Park Road, the easement herein reserved to be in perpetuity as an appurtenance to all other parcels aforesaid and not merely personal to the Grantors.

In 1997, E.C. Snead, Jr. and Jane F. Snead conveyed the property ("the 1997 Deed") to the Industrial Development

---

[3] The complaint also contained an allegation of "Tortious Interference with and Obstruction of Easement." This second count was nonsuited during the trial.

Authority of the City of Fredericksburg ("IDA"). The 1997 Deed stated that the conveyance was made subject to "any and all easements of record and 60' ingress and egress easement . . . reserved for the benefit of the Grantors and the owners of the property."

Subsequently, the IDA conveyed by deed ("the 2004 Deed") approximately 4.3 acres of land to C&S Properties and Sylvia Properties, which land was subsequently partitioned between the two grantees. The conveyance was "made expressly subject to any and all easements, conditions, restrictions and agreements of record insofar as they may be lawfully applicable to the property hereby conveyed."

Presently, the Easement runs in an east-west direction on the northern edge of property owned by C&S Properties. The Easement is bordered to the north by the Battlefield Industrial Park, and connects Lee Drive to the west with Central Road to the east.

Eric Sullivan ("Sullivan"), a licensed land surveyor whose company prepared the survey of the parties' property, testified that during the survey, his firm "located [] objects inside the 60-foot [E]asement." The objects included "a fence, two fences, some sewer manhole[,] a pile of riprap" and a sign. Additionally, an earthen berm and a storm drain basin extend into the Easement.

4

Sullivan testified that the northern portion of the Easement contains a gravel road ("gravel road"), which runs "from Park Road, Lee Drive, all the way through to Central Road." Counsel for C&S Properties conceded that Snead "ha[s] access across [C&S Properties' land] by way of that variable width, 12- to 15-foot [gravel] road." The gravel road is bounded to the north and the south by "a line of mature trees," however "it generally appear[s] flat and passable."

Steven Robinson ("Robinson"), the owner of C&S Properties, testified that when C&S Properties acquired its property, he was aware of the Easement and the fact that it comprised 60 feet in width. Robinson acknowledged that a fence that runs parallel to the gravel road was constructed within the Easement because it was necessary for the security of the property owned by C&S Properties and Sylvia Properties. The fence also contains "at least two . . . offshoots or perpendicular stretches . . . that run to and across th[e] southern boundary" of the Easement. In addition to securing its property with a fence, Robinson stated that Sylvia Properties uses a portion of the Easement for "stacking and storing port-a-potties or portable latrines."

During his testimony, Robinson conceded that the fence prevents access to or use of "the portion of the [E]asement to the south of the fence" from the gravel road. The fence

obstructs Snead's access to approximately 40 feet in width on the southern side of the Easement. Robinson testified that he never witnessed anyone traversing any portion of the Easement other than the gravel road.

Douglas C. McWhirt ("McWhirt"), a nephew of Emmett Snead, Jr., testified regarding his use of the Easement. McWhirt testified that he used the gravel road to enter his property either from Central Road, Lafayette Boulevard, or Tyler Street. He acknowledged that the width of the gravel road concerns him because certain vehicles have difficulty accessing his property across it. In particular, a septic tank truck, which currently suffers damage when it enters McWhirt's property via the gravel road, typically enters his property via the adjacent park, which prohibits commercial traffic.

Additionally, McWhirt voiced concern that the gravel road experiences traffic in both directions, however it is not wide enough in its present state to accommodate two vehicles at the same time. McWhirt testified that the fence owned by C&S Properties prevents him from accessing or crossing his property by any means other than the gravel road, and he expressed his concern that his failure to obtain removal of the fence now would later result in his permanent loss of the use of that portion of the Easement.

At the close of the evidence, the trial court heard oral argument from the parties. The parties then submitted letter briefs, and thereafter the trial court issued its letter opinion and final decree, which held that the 1997 Deed "creates an express easement by reservation . . . specifically for ingress and egress." Therefore, the Easement is "an express easement appurtenant for the benefit of the remainder of [Snead's] land."

Notwithstanding this conclusion, the trial court declined to grant Snead's requested permanent injunctive relief against C&S Properties because "it would be a useless and unduly burdensome act to compel the defendants to remove all man-made objects within the [Easement]." The trial court emphasized that "none of these objects interferes with passage along the gravel road." Further bolstering its decision to deny injunctive relief, the trial court noted that "even if equity compelled the defendants to remove the man-made objects in the [E]asement, [Snead] still would be unable to use the entire easement . . . because of the stand of trees down the length of the easement."

Snead timely filed their notice of appeal and we granted an appeal on the following assignments of error:

1. The trial court erred in denying the Plaintiffs' prayer for mandatory injunctive relief because:

The finding of an express easement appurtenant for ingress and egress in favor of the Plaintiffs across land owned by the Defendants, coupled with evidence of obstructions to, and significant interference with, that easement entitles the Plaintiffs to mandatory injunctive relief.

2.  The trial court's refusal to grant injunctive relief under the facts of this case and applicable law was plainly wrong.

3.  The decision of the trial court permits an unjust taking of the Plaintiffs' easement rights and modifies the express easement appurtenant.

## II.  Analysis

### A.  Standard of Review

In this case, we review whether the trial court erred when it denied Snead's request for permanent injunctive relief.

> "[W]hen a case is decided by a court without the intervention of a jury and a party objects to the decision on the ground that it is contrary to the evidence, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."  Code § 8.01-680.  "It is axiomatic that a [trial court's] finding on conflicting evidence, heard ore tenus, will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Ivy Constr. Co. v. Booth, 226 Va. 299, 301, 309 S.E.2d 300, 301 (1983) (per curiam) (citing Rochelle v. Rochelle, 225 Va. 387, 393, 302 S.E.2d 59, 63 (1983)). Conversely, "[a] judgment or decree that is plainly wrong, or without evidence to support it, cannot be allowed to stand."

Pizzarelle v. Dempsey, 259 Va. 521, 527, 526 S.E.2d 260, 263 (2000).  Furthermore, the decision to grant or deny an injunction is within the discretion of the trial court, and it

8

will not be disturbed on appeal unless it is plainly wrong. Blue Ridge Poultry & Egg Co. v. Clark, 211 Va. 139, 144, 176 S.E.2d 323, 327 (1970).

## B. Injunctive Relief

Snead argues that the trial court's denial of injunctive relief was plainly wrong because the man-made improvements and obstructions in the Easement prevent Snead's "use and enjoyment of a significant portion of the Easement." Snead further argues that denial of injunctive relief "would permit a taking of a portion of the Easement by [C&S Properties], thereby rewarding [C&S Properties] for its interference with [Snead's] deeded property rights." We agree.

The outcome in this case is controlled by our decision in Pizzarelle, which involved a 24-foot wide ingress and egress easement created by a deed of easement for the benefit of the property owners in a subdivision. 259 Va. at 523-24, 526 S.E.2d at 261. In that case, the instrument creating the deed provided:

> 1. The easement shall be used exclusively for the purpose of ingress and egress to the Lots.
>
> 2. No act shall be performed by any owner of a Lot, their tenants, guests, or agents which would in any manner affect or jeopardize the free and continuous enjoyment of any other owner of a Lot in and to the easement.

Id. at 524, 526 S.E.2d at 261.

9

In their amended bill of complaint, the Pizzarelles alleged that the defendants "obstruct[ed] and interfer[ed] with the full use of the easement by virtue of certain fences, a rock wall, and bushes and trees that the [defendants] placed in the easement." Id. at 525, 526 S.E.2d at 262. The Pizzarelles sought "an injunction directing [the defendants] to remove all obstructions placed in or along the easement, and restraining [the defendants] from any further obstruction of the easement." Id.

At trial, the evidence revealed that the defendants had planted some of their trees and shrubs "approximately two to three feet" within the 24-foot easement. Id. Additionally, a wooden, picket-style fence was constructed "approximately four to five feet inside the southern border of the easement." Id. at 526, 526 S.E.2d at 262. Mr. Pizzarelle described these improvements as a " 'permanent block to anyone getting through that portion of the easement.' " Id. at 527, 526 S.E.2d at 263. The trial court held that the "encroachment was insubstantial" and denied the prayer for injunctive relief. Id.

On appeal, we reversed the decision of the trial court, holding that "the obstructions in the easement are a material encroachment on the dominant owners' rights." Id. at 530, 526 S.E.2d at 265. In reaching that conclusion, we observed,

10

> [t]o affirm the circuit court's denial of injunctive relief in this case would in effect allow [the defendants] to appropriate a portion of the easement and reduce a 24-foot easement to one of 19 to 20 feet in width. [The Pizzarelles] acquired a 24-foot easement, and they are entitled to the free and continuous use and enjoyment of that 24 feet for the purpose of ingress and egress. The terms of the easement specifically guaranteed that right to them.

Id. at 531, 526 S.E.2d at 265.

We further noted that the question was not one of reasonableness, nor was it a case in which the equities should be balanced. Id. at 531, 526 S.E.2d at 265-66. In Pizzarelle, the defendants argued that the obstructions in the easement did not impede vehicular traffic. Id. Notwithstanding the truth of that statement as to the unimpeded northern portion of the easement, "the obstructions in the easement completely block[ed] all ingress and egress on the south side of the wooden fence." Id. at 531, 526 S.E.2d at 266. Based on the facts presented, we concluded that "a significant portion of the easement would be rendered unusable for ingress and egress if injunctive relief were denied," and as a result we held that the trial court was plainly wrong when it denied the injunction. Id.

The same analysis compels a reversal in this case. In its letter opinion, the trial court found that Snead "presented no evidence whatever that any of the objects complained of disrupt

11

[Snead's] enjoyment of free passage along the [E]asement." The trial court also noted that "none of [the Improvements] interferes with passage along the gravel road." The trial court incorrectly concluded that C&S Properties' lack of interference with the gravel road was conclusive of the question whether C&S Properties obstructed the Easement.

The 1971 Deed clearly reserved "the northernmost 60' of the parcel" – not merely the gravel road – for the use of Snead and their successors in interest. "[W]here a reservation is of a certain width, that width cannot be encroached upon." Willing v. Booker, 160 Va. 461, 465, 168 S.E. 417, 418 (1933). As in Pizzarelle, Snead is "entitled to the free and continuous use and enjoyment of [the Easement] for the purpose of ingress and egress." 259 Va. at 531, 526 S.E.2d at 265. Conversely, a consequence of Snead's failure to obtain injunctive relief would result in C&S Properties ascending to "a new and different use of an express easement . . . established by prescription, i.e., a showing of adverse use under a claim of right, a use which is exclusive, continuous and uninterrupted and occurs with the knowledge of the land owner for at least twenty years." Id. at 530-31, 526 S.E.2d at 265 (internal quotation marks omitted).

Despite this express reservation of land for the Easement, Robinson, the owner of C&S Properties, acknowledged that the

12

fence his company constructed prevented Snead from utilizing approximately two-thirds the width of the Easement.  Even more so than in Pizzarelle where the encroachment constituted four to five feet of a 24-foot easement, C&S Properties' sizeable encroachment is "a material encroachment on the dominant owners' rights" because "a significant portion of the [E]asement would be rendered unusable for ingress and egress if injunctive relief were denied."  Id. at 530-31, 526 S.E.2d at 265-66.  Accordingly, we hold that the trial court was plainly wrong when it denied Snead's request for permanent injunctive relief.

III.  Conclusion

For the reasons stated herein, we will reverse the judgment of the Circuit Court of the City of Fredericksburg and remand the case to the trial court for entry of a final order granting injunctive relief to Snead.

Reversed and remanded.

13