COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Raphael
Argued at Richmond, Virginia

THIBAULT ENTERPRISES, LLC

                                             MEMORANDUM OPINION[*] BY
v.       Record No. 1845-23-2        JUDGE MARY BENNETT MALVEAUX
                                                JANUARY 14, 2025

DAVID A. YOST, CO-TRUSTEE UNDER
  THE YOST LIVING TRUST, ET AL.

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

Philip Carter Strother (Strother Law Offices, PLC, on briefs), for
appellant.

Bruce E. Arkema (Durrette, Arkema, Gerson & Gill, PC, on brief),
for appellees.

Thibault Enterprises, LLC ("Thibault") appeals a final order of the circuit court addressing

certain issues involving an easement. Thibault argues that the circuit court erred in ruling that it

must remove its objects contained within the easement area where such placement did not interfere

with the purpose and use conferred by the easement. It also argues that the circuit court erred in its

determination regarding the easement's location. For the following reasons, we affirm the decision

of the circuit court.

BACKGROUND

The Yost Living Trust ("the Trust") owns property, consisting of approximately 1.08

acres in Dinwiddie County; David and Caryn Yost are trustees and beneficiaries of the Trust.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

The parcel was first subdivided from a larger property that was conveyed to Dorothy L. Gill by deed in 1971 ("the Gill deed"). The Gill deed describes the parcel as

> [a]ll of that certain tract or parcel of land, with the appurtenances thereto belonging, lying, being and situate in Namozine District, Dinwiddie County, Virginia, containing one and eight one-hundredths (1.08) acres, more or less, as shown on plat of Charles C. Townes, Surveyor, dated May 15, 1971, attached hereto and made a part of this deed.

The Gill deed then provides a metes and bounds description of the parcel.

The Gill deed also conveyed an ingress and egress easement, described as follows: "the right of ingress and egress over an outlet road, fifty (50) feet in width, running from the southwestern corner of the lands hereinbefore conveyed to State Route #601, which right is to run with the lands hereby conveyed." The plat attached to the Gill deed shows an outlet road starting at State Route #601 and ending at nearly the midpoint of the western boundary of the property. The deed conveying the property to the Trust ("the Trust deed") references both the plat and the ingress and egress easement.

Thibault is the owner of approximately 171.35 acres of property adjacent to the Trust property and subject to the easement described in the Gill deed.

The Trust filed a complaint against Thibault seeking injunctive relief and declaratory judgment. The Trust alleged that Thibault had "installed objects within the 50' Easement including poles, outbuildings, mounds of dirt, large hay bales and plants . . . that interfere with the . . . [e]asement" and that the placement of these objects constituted a private nuisance. The Trust asked the circuit court to issue an injunction preventing Thibault from placing all objects in the easement.[1]

---

[1] The Trust also asked for a declaratory judgment that Thibault had the duty to maintain the outlet road. The circuit court's determination regarding the maintenance of the outlet road is not an issue on appeal to this Court.

At the circuit court's hearing on the complaint, the court admitted stipulated exhibits from the parties consisting of deeds, surveys, and photographs of the easement, and then heard argument from the parties. Thibault conceded that some hay bales and fencing containing grapevines belonging to Thibault were located within the 50-foot easement. In addition, photographs and a survey admitted into evidence also showed the location of the hay bales and grapevines within the easement, specifically at the side of, but not on, the outlet road. A McKnight and Associates survey ("McKnight survey") also reflected that there were hay bales and grapevines located inside the easement, near the edge of the outlet road. The parties did not dispute that the outlet road was "usable," despite the presence of the hay bales and grapevines.

Thibault argued that the standard for whether the objects in the easement should be removed was one of "reasonableness" and that the objects did not create "an unreasonable ingress and egress issue." The Trust contended that Thibault was not permitted to place anything in the easement that "narrows the width of the easement." The parties also disagreed as to the size of the easement. Based on the language of the Gill deed, Thibault argued that the easement stopped at the southwest boundary of the Trust property, while the Trust asserted that the easement extended onto the western boundary of the property, as reflected on the plat.

In a letter opinion, the circuit court first addressed the issue of the objects placed in the easement, noting that it was "undisputed that [Thibault] have placed grapevines and bales of hay in the easement." The court then stated that "it is true that the grapevines and hay bales do not interfere with [the Trust's] current use of the easement. Nevertheless, . . . it is improper for [Thibault] to place objects in the easement." The court accordingly ordered Thibault to remove the hay bales and grapevines from the easement. Concerning the issue of the location of the easement, the court ruled that "[w]hile the language in the deed is not so clear as it could have been, and the use of the term 'corner' is a bit vague, . . . the intent was for [the Trust] to receive

the entire easement area as shown on the plat and not for the easement to stop at [the] southern boundary line of [the Trust's] property." Thus, the court found that the easement runs "from River Road (Route 608) and terminates along the southwest property line of [the Trust's] property as depicted" on the plat attached to the Gill deed. The circuit court memorialized its rulings in a final order, to which Thibault listed objections. This appeal followed.

## ANALYSIS

"The case was decided by the circuit court on stipulated facts and the appeal presents pure questions of law applied to these undisputed facts. Accordingly, we apply a de novo standard of review." *Dykes v. Friends of the C.C.C. Rd.*, 283 Va. 306, 308 (2012). On appeal, Thibault challenges the circuit court's rulings requiring removal of its objects in the easement and concerning the length of the easement. We address each in turn.

## I. Objects in the Easement

"[T]he decision to grant or deny an injunction is within the discretion of the trial court, and it will not be disturbed on appeal unless it is plainly wrong." *Snead v. C&S Props. Holding Co.*, 279 Va. 607, 613 (2010). "The issuance of an injunction to prevent encroachment within the boundaries of an easement is an equitable remedy, and the proponent of such remedy bears the burden of proving facts establishing the easement and the need for the relief sought." *Anderson v. Delore*, 278 Va. 251, 257 (2009).

Thibault first argues that the circuit court's decision to grant injunctive relief to the Trust preventing Thibault from placing any objects within the 50-foot-wide easement was an abuse of discretion because the decision was contrary to controlling Virginia precedent. It contends that Virginia easement law establishes a reasonableness standard, not a bright-line rule preventing any object from being placed in an easement by the servient estate.

- 4 -

A review of Virginia Supreme Court cases on this subject demonstrates that Thibault is correct in that there is a reasonableness standard applied to a servient estate's encroachment of an easement, but only when that encroachment does not narrow the width of the easement. Our conclusion stems from the holdings in three easement cases, *Pizzarelle v. Dempsey*, 259 Va. 521 (2000), *Snead*, and *Piney Meeting House Invests., Inc. v. Hart*, 284 Va. 187 (2012).

In *Pizzarelle*, the defendants, owners of the servient estate, planted trees and bushes and erected a fence 4 to 5 feet inside a 24-foot-wide ingress and egress easement, but outside of the paved portion used for ingress and egress. 259 Va. at 524-26, 531. The instrument establishing the easement provided that it "shall be used exclusively for the purpose of ingress and egress to the Lots" and that "[n]o act shall be performed by any owner of a Lot, their tenants, guests, or agents which would in any manner affect or jeopardize the free and continuous enjoyment of any other owner of a Lot in and to the easement." *Id.* at 524. The circuit court held that the encroachment was insubstantial and did not warrant injunctive relief. *Id.* at 527. Our Supreme Court reversed the circuit court and remanded the case for entry of an injunction ordering the defendants to remove all obstructions within the easement. *Id.* at 532. The Court rejected the circuit court's determination that the encroachment on the easement had been insubstantial, "because the obstructions in the easement [were] a material encroachment on the [plaintiffs'] rights." *Id.* at 530. The Court concluded that "[t]o affirm the circuit court's denial of injunctive relief in this case would in effect allow the [servient estate] to appropriate a portion of the easement and reduce a 24–foot easement to one of 19 to 20 feet in width." *Id.* at 531. The Court also noted the specific easement language in that case, which stated that the plaintiffs are entitled to "the free and continuous enjoyment" of the easement, *id.* at 524, because "[t]he terms of the easement specifically guaranteed that right to them and further stated that no owner of a lot shall perform any act that interferes with that right," *id.* at 531. Based on this language, the Court

stated that "[u]nlike some cases, the question here is not one of 'reasonableness' or whether the easement is now 'less useful or less convenient.'" *Id.* (quoting *Willing v. Booker*, 160 Va. 461, 466 (1933)).[2]

In *Snead*, the defendant, the servient landowner, erected a chain-link fence, placed signs, and installed riprap within the bounds of a 60-foot-wide ingress and egress easement, narrowing the effective width to approximately 40 feet on the southern side of the easement. 279 Va. at 609, 611. The circuit court denied injunctive relief because the placement of these items did not interfere with passage along a gravel road within the easement, and because "even if equity compelled the defendants to remove the man-made objects in the [E]asement, [the plaintiffs] still would be unable to use the entire easement . . . because of [a] stand of trees down the length of the easement." *Id.* at 612 (first alteration in original). Relying on *Pizzarelle*, our Supreme Court reversed the circuit court, holding that the court "incorrectly concluded that [the defendant's] lack of interference with the gravel road was conclusive of the question whether [the defendant] obstructed the Easement." *Id.* at 615. Rather, the objects placed within the easement created "'a material encroachment on the dominant owners' rights' because 'a significant portion of the [e]asement would be rendered unusable for ingress and egress if injunctive relief were denied.'" *Id.* at 616 (quoting *Pizzarelle*, 259 Va. at 530-31).

Our Supreme Court clarified the holdings in *Pizzarelle* and *Snead* in its later opinion, *Piney Meeting House*. In that case, the Court held that "[*Pizzarelle* and *Snead*] establish that a servient landowner may not effectively narrow the defined width of an [ingress and egress]

---

[2] In *Willing*, the owner of an easement sought to prevent the servient estate from building a line fence along the boundary of the easement. 160 Va. at 463. Our Supreme Court affirmed the principle that "where a reservation is of a certain width, that width cannot be encroached upon." *Id.* at 465. In addressing the specific issue of whether the servient estate could erect a division fence on the boundary of the easement, the Court applied a "reasonableness" test to determine whether fencing placed along the border of an easement made the lane "less useful or less convenient." *Id.* at 466.

- 6 -

easement by placing obstructions amounting to 'a *material* encroachment on the dominant owner['s] rights,' even when the encroachment does not interfere with ingress and egress at that time." 284 Va. at 194 (third alteration in original) (quoting *Pizzarelle*, 259 Va. at 530). The Court then rejected the plaintiffs' argument that "every encroachment, no matter how minor, is material when the easement is of an express width," and instead held that "[o]ur cases make clear that the owner of a servient estate may still make reasonable use of land burdened by an easement of defined width." *Id.* It further held that "[a]n encroachment that does not narrow the width of an easement or unreasonably interfere with its use is not a material encroachment." *Id.* The plaintiffs had not alleged that an underground tank and well would narrow their easement, and "[t]hus, the proper inquiry for . . . the circuit court was whether the buried propane tank and well, if modified, would unreasonably interfere with the [plaintiffs'] use." *Id.* at 195.

*Piney Meeting House* establishes that, under this line of cases, the dispositive question is whether Thibault's hay bales and grapevines "narrow the width of an easement or unreasonably interfere with its use," thus rendering the objects "a material encroachment." *Id.* at 194. We conclude that the stipulated evidence at trial clearly established that the objects placed in the easement by Thibault narrowed the width of the easement. Thibault itself admitted that the items were within the easement area, and the McKnight survey reflects that several hay bales and grapevines were placed throughout the easement along the side of the outlet road. Although Thibault argues that the hay bales and grapevines do not constitute a material encroachment of the easement because these objects are not located on the outlet road itself, and thus do not prevent the use of the road for ingress and egress, this fact is immaterial to our analysis. Because the encroachment narrowed the width of a defined easement, the circuit court did not err in granting the Trust's request for injunctive relief and ordering Thibault to remove the objects it had placed within the easement area.

Thibault further argues that the circuit court erred because its decision granting injunctive relief was contrary to the legal standard established in Code § 55.1-305. That code section provides, in relevant part, that

> [u]nless otherwise provided for in the terms of an easement, the owner of a dominant estate shall not use an easement in a way that is not reasonably consistent with the uses contemplated by the grant of the easement, and the owner of the servient estate shall not engage in an activity or cause to be present any objects either upon the burdened land or immediately adjacent to such land that unreasonably interferes with the enjoyment of the easement by the owner of the dominant estate.

Thibault contends that Code § 55.1-305 expressly prevents the Trust from using the easement in a way that is not "reasonably consistent with the uses contemplated," that is, only as an ingress and egress easement over the outlet road. *Id.* Here, the Gill deed provides an easement for "the right of ingress and egress over an outlet road, fifty (50) feet in width." The easement contemplated by the Gill deed is thus for an outlet road of 50 feet in width. While the outlet road currently is not 50 feet wide, the Trust has the right to an easement for ingress and egress of that particular size, as noted in the deed. And as noted above, Supreme Court precedent is clear that when a defined easement's purpose is for ingress and egress, as in *Pizzarelle*, *Snead*, and *Piney Meeting House*, an encroachment may not narrow the width of the easement. Here, the Trust is using the easement in a way "reasonably consistent with the uses contemplated," namely for ingress and egress over its entire 50-foot width. *Id.*

Regarding the language in Code § 55.1-305 that prevents a servient owner placing objects in an easement that "unreasonably interferes with the enjoyment of the easement by the owner of the dominant estate," Thibault asserts that its objects in the easement do not unreasonably interfere with the Trust's use of the easement. Thibault notes that the circuit court specifically found that "the grapevines and hay bales do not interfere with [the Trust's] current use of the easement." But, as noted in *Piney Meeting House*, the question of whether an object is a material

- 8 -

encroachment on an easement is one of reasonableness of use *and* whether the use narrows the width of the easement, which it does in this case. 284 Va. at 194-95. Thus, we reject Thibault's argument and conclude that Code § 55.1-305 does not support its position that the circuit court erred in ordering it to remove its grapevines and hay bales from the easement. [3]

## II. Interpretation of the Deed

Thibault also argues that the circuit court erred by ruling that the easement terminates at the midwestern boundary line of the Trust's property, and not at the hub tack in the center of the outlet road located at the southwestern corner of the property.

"In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents." *Anderson*, 278 Va. at 257. "[L]ike other contracts," appellate courts "review a trial court's construction of a deed of easement de novo." *Wetlands Am. Tr., Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 160 (2016). We also review de novo the question of whether a deed is ambiguous. *Id.* Where language in a deed conveying an easement "is clear, unambiguous, and explicit," a construing court "should look no further than the four corners of the instrument under review." *Irby v. Roberts*, 256 Va. 324, 329 (1998) (quoting *Langman v. Alumni Ass'n of the Univ. of Va.*, 247 Va. 491, 498-99 (1994)). In doing so, the court strives "to give effect to the parties' intention as expressed by them in the words they have used." *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 197 (2017) (quoting *Wetlands Am. Tr.*, 291 Va.

---

[3] On brief, Thibault makes two additional arguments under this assignment of error: (1) that the express language of the Gill deed limited the purpose and intent of the easement to an ingress and egress driveway for a single-family dwelling over an *existing* outlet road, and (2) that preventing it from placing any objects within the 50-foot-wide ingress and egress easement is bad public policy because it prevents Thibault from conducting agricultural activities within the easement. Thibault did not raise these arguments below before the circuit court; accordingly, we decline to address them on appeal. *See* Rule 5A:18.

at 160). "'[T]he whole of a deed and all its parts should be considered together' in order to determine the controlling intent." *Id.* (quoting *Wetlands Am. Tr.*, 291 Va. at 161).

"[W]here a deed incorporates a plat by reference, 'that plat must be considered "part of the instrument itself."'" *Auerbach v. Cnty. of Hanover*, 252 Va. 410, 414 (1996) (quoting *Faison v. Union Camp Corp.*, 224 Va. 54, 59 (1982)); *see also Burdette v. Brush Mt. Ests., LLC*, 278 Va. 286, 298 (2009) ("When a deed incorporates a plat by reference, the plat is considered part of the deed itself . . . to establish the metes and bounds of the property being conveyed."). "Moreover, references on the plat to deeds recorded incorporate the legal descriptions of those deeds into the plat and, thus, into any subsequent deeds referencing the plat." *Auerbach*, 252 Va. at 414.

Thibault asserts that the express language of the Gill deed unambiguously provides that the easement over the outlet road begins at the southwestern corner of the Trust's parcel, not at the midwestern boundary line of the Trust's parcel, as determined by the circuit court. Thibault's argument relies on two different provisions of the Gill deed. First, the Gill deed states that the easement runs "from the southwestern corner of the lands hereinbefore conveyed to State Route #601." The Gill deed also provides the metes and bounds perimeter of the Trust's parcel, "beginning at a hub tack in the center of a 50 ft. outlet road, leading to State Route #601, which point is one mile from said State Route #601, and is on the southwestern corner of said property." Thibault argues that these provisions, read together, unambiguously provide that the easement only runs from the southwestern boundary of the Trust's parcel to State Route 601.

But this conclusion is belied by the placement of the easement on the plat itself. The plat clearly reflects that the easement runs from State Route 601 to the midpoint of the Trust parcel's western border. As this plat was incorporated by the Gill deed, and later referenced by the Trust deed, it is "part of the instrument itself." *Auerbach*, 252 Va. at 414 (quoting *Faison*, 224 Va. at

59).  Further, the language granting the easement itself indicates that the easement is "over an outlet road."  This outlet road is depicted on the plat, and shows that the road does not terminate at the southwestern boundary of the Trust property, but rather continues to the Trust parcel's midwestern boundary line.  Because the plat, which shows the location of the outlet road, is a part of the conveying instrument, the circuit court did not err in its conclusion "that the intent was for [the Trust] to receive the entire easement area as shown on the plat and not for the easement to stop at [the] southern boundary line of [the Trust's] property."

Thibault, however, argues that our Court need only look to the words of the deed rather than the plat, citing to *Smith v. Bailey*, 141 Va. 757 (1925), in support of this argument.  In *Smith*, the plaintiff filed an ejectment action against the defendant to recover a ten-foot strip of land.  *Id.* at 761.  The parties introduced deeds containing legal descriptions, as well as plats referenced in the deeds, that supported each of their contentions.  *Id.* at 766-67.  In comparing the competing titles, our Supreme Court noted that, as a general rule, a plat referred to in a deed becomes a part of the deed.  *Id.* at 775.  But in the defendant's case, the "plat [was] only referred to in a general way and there [was] not a line or a call in the plat anywhere mentioned in the description," in contrast to the particular description of the land by metes and bounds found in the deeds.  *Id.* at 771-72, 775.  The Court held that if the descriptions were inconsistent, "then the definite, particular description, which in this case is the description by metes and bounds, with no uncertainty whatever as to it, will prevail over the general description, certainly and especially where, as in the instant case, it accords with the manifest intent of the parties."  *Id.* at 773.

We conclude that *Smith* does not support Thibault's position in the instant case.  Here, the Gill deed does not provide a more particular definition of the easement than the plat.  A metes and bounds description of the easement is not provided in the Gill deed.  Rather, the deed simply states that it grants "the right of ingress and egress over an outlet road, fifty (50) feet in

- 11 -

width, running from the southwestern corner of the lands hereinbefore conveyed to State Route #601." Thibault relies on the fact that the Gill deed does provide an exact point for the southwestern corner of the lands by metes and bounds. But providing an exact point for the southwestern corner does not rise to the level of a metes and bounds description of the easement itself, which, based on the language of the deed, is "over an outlet road" that "run[s] from the southwestern corner of the lands." Here, the deed's language does not provide a more particular description than the plat itself. Instead, the "manifest intent of the parties" was to provide an easement over an outlet road, which is depicted in the plat. *Id.* Accordingly, we conclude that the language of the deed, along with the incorporated plat, supports the circuit court's determination that the easement's size and location is reflected accurately on the plat, such that it goes to the midwestern boundary line of the Trust's property and does not terminate at the hub tack in the center of the outlet road.[4]

## CONCLUSION

For the reasons stated above, we affirm the decision of the circuit court.

*Affirmed.*

---

[4] Thibault also argues that the circuit court erred by rejecting or not ruling on its counterclaim asserting the Trust's driveway extension onto the Thibault property exceeds the scope of the easement. Thibault filed a counterclaim seeking, in part, a declaratory judgment that a driveway it alleged was added by David and Caryn Yost was beyond the boundary of the easement and should be removed. But the circuit court made no ruling on this issue in its letter opinion or order. Accordingly, Thibault has waived this issue by failing to obtain a ruling on it. *See Hawkins v. Town of S. Hill*, 301 Va. 416, 434 (2022) (affirming the decision of the circuit court when a litigant failed to obtain a ruling on the argument in the circuit court because there was "no ruling to address on appeal").

- 12 -