PRESENT: All the Justices

THIBAULT ENTERPRISES, LLC

                                                    OPINION BY
v. Record No. 250128                    JUSTICE STEPHEN R. McCULLOUGH
                                                      April 9, 2026

DAVID A. YOST, CO-TRUSTEE
UNDER THE YOST LIVING TRUST, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

The Yosts rely on an easement for ingress and egress to reach their home over a gravel

road. Their easement is for a specific width of 50 feet. Thibault Enterprises, LLC owns the land

over which the Yosts' easement is situated. Thibault has placed some fencing, vines, and

occasionally other objects, such as hay bales, within the width of the easement. These objects do

not prevent or impede the Yosts from traveling over the gravel road to reach their house. The

question we must address is whether the holder of an easement of a specific width is entitled to

forbid the placement of any objects within the width of the easement, or whether the presence of

such objects is subject to a reasonableness analysis based on the language of the deed and the

underlying purpose of the easement. For the reasons noted below, we hold that a rule of

reasonableness applies. Accordingly, we will reverse the judgment of the Court of Appeals.

BACKGROUND

The facts are not in dispute. The Yost Living Trust owns 1.08 acres of land in Dinwiddie

County. David A. Yost and Caryn L. Yost live in a single-family dwelling on this land.[1] The

Yosts are the Trustees of the Yost Living Trust for the benefit of themselves. They also own an

_____

[1] For the sake of simplicity, we will refer collectively to the Yost Living Trust and to
David and Caryn Yost as "the Yosts."

easement that grants them, in the language of the deed, "the right of ingress and egress over an outlet road, fifty (50) feet in width, running from the southwestern corner of the [Yosts' property] to State Route #601."  The easement crosses over land owned by Thibault.  To reach their house, the Yosts drive down a gravel road, which is approximately 12 feet wide.  The gravel road is within the width of the 50-foot easement.  Thibault uses its land for a variety of agricultural purposes.  It has placed fences with grapevines, fences, fence poles, and hay bales within the boundaries of the 50-foot easement to the side of the gravel road, but not in the road itself.  The parties stipulated that there are also some trees within the 50-foot easement.

The Yosts filed a complaint alleging that the presence of these things within their easement constitutes a nuisance.  They asked for "an injunction against the Defendant placing anything in the 50' Easement."  The Yosts contend that they are entitled to the use of the entire 50-foot easement, and that Thibault is not permitted to place any plants or objects within that 50-foot width of the easement.  As counsel argued to the circuit court, the Yosts "want the whole 50 feet."  They acknowledged that their ingress and egress is "by and large not hampered."  Thibault countered that so long as the Yosts are able to come and go, and their rights are not subject to unreasonable interference, they cannot force the removal of objects placed in the easement.

The circuit court granted the injunction and prohibited Thibault from "placing any objects . . . in the 50' easement area."  In its opinion letter, incorporated by reference into its final order, the circuit court found that although "the grapevines and hay bales do not interfere with [the Yosts'] current use of the easement," nevertheless "it [was] improper for Thibault to place objects in the easement."

Thibault appealed to the Court of Appeals, which affirmed by unpublished opinion. *Thibault Enters. L.L.C. v. Yost*, No. 1845-23-2 (2025).  The court reasoned that the hay bales and

2

vines indisputably were placed within the 50-foot easement, and, therefore, Thibault impermissibly "narrowed the width of the easement." Slip op at 7. We granted Thibault an appeal from that decision.

ANALYSIS

"[T]he decision to grant or deny an injunction is within the discretion of the trial court, and it will not be disturbed on appeal unless it is plainly wrong." *Snead v. C&S Props. Holding Co.*, 279 Va. 607, 613 (2010). Granting an injunction is plainly wrong if "it was not supported by the evidence or was based on an erroneous application of the law." *Piney Meeting House v. Hart*, 284 Va. 187, 193 (2012). "The issuance of an injunction to prevent encroachment within the boundaries of an easement is an equitable remedy, and the proponent of such remedy bears the burden of proving facts establishing the easement and the need for the relief sought." *Anderson v. Delore*, 278 Va. 251, 257 (2009).

I. VIRGINIA LAW DOES NOT REQUIRE THE REMOVAL OF ALL OBJECTS WITHIN AN EASEMENT OF A DEFINED WIDTH.

The parties offer two competing conceptions of the rights of an easement holder when the easement is of a specified width. For the Yosts, their easement is for 50 feet, and any obstacle in that 50-foot span interferes with their rights. For Thibault, the purpose of the easement is significant and, here, the easement is for ingress and egress along an outlet road. Thibault notes that the Yosts are able to make use of their easement because they come and go without difficulty. Moreover, Thibault argues, to strip it of any right to use its land within the 50-foot span of the easement would be inconsistent with its right to use its land for whatever purpose it deems fit, so long as it does not interfere with the Yosts' right of ingress and egress.

Our most recent case on the subject, *Piney Meeting House*, 284 Va. at 190, involved a 30-foot "easement and right-of-way for ingress, egress, and related utilities." The holders of the

3

easement contended that the placement of an underground propane tank interfered with their easement. *Id.* at 190, 192. They argued that "every encroachment, no matter how minor, is material when the easement is of an express width." *Id.* at 194. We unambiguously answered that "[w]e do not agree." *Id.* We observed that "[o]ur cases make clear that the owner of a servient estate may still make reasonable use of land burdened by an easement of defined width." *Id.* That holding is consistent with a line of cases going back nearly 100 years.

Thus, in *Willing v. Booker*, 160 Va. 461, 466 (1933), we observed that "the owner of the soil may make any use of his land which does not interfere with the reasonable use of the [right of] way." Whether an encroachment makes a right of way "less useful or less convenient" is a matter that should be resolved by a factfinder, and "the test is reasonableness." *Id.* Because the fence at issue in *Willing* did not impede the easement holder's ingress or egress, the Court sided with the owner of the servient estate who had erected the fence. *Id.* at 468.

We reiterated this framework in *Walton v. Capital Land*, *Inc.*, 252 Va. 324, 326 (1996), observing that "we have repeatedly held that the owner of the servient estate retains the right to use his land in any manner which does not unreasonably interfere with the use granted in the easement." We explained that when a "conveyance limits exclusive use of all or part of the servient estate to a particular purpose, the conveyance is an easement and the servient landowner retains the right to use the land in ways not inconsistent with the uses granted in the easement." *Id.* at 326-27.

In *Pizzarelle v. Dempsey*, 259 Va. 521 (2000), we considered whether the owners of the servient estate improperly interfered with the easement holders' rights by placing bushes, trees, and a rock wall within the easement boundary. The easement conferred a right of ingress and egress for an easement that was 24 feet wide. *Id*. at 525-26. The deed creating the easement

4

contained the following additional language: "No act shall be performed by any owner of a Lot, their tenants, guests, or agents which would in any manner affect or jeopardize the free and continuous enjoyment of any other owner of a Lot in and to the easement." *Id.* at 524. The plaintiffs offered evidence questioning whether emergency vehicles could gain access to their homes if the full 24 feet of the easement were not open. *Id.* at 527. They also testified that the encroachments created difficulties for snow removal. *Id.* The circuit court concluded that the encroachment was insubstantial and did not warrant injunctive relief. *Id*. at 530. We disagreed, concluding that "the obstructions in the easement are a material encroachment on the dominant owners' rights." *Id*. The evidence established that "the obstructions in the easement completely block[ed] all ingress and egress on the south side of the wooden fence," and that "[i]n the present case, a significant portion of the easement would be rendered unusable for ingress and egress." *Id.* at 531. The strong language of the deed, which prohibited any act that "would in *any manner* affect or jeopardize the free and continuous enjoyment . . . of the easement," also reinforced the easement holder's claim. *Id.* at 531 (emphasis added). Consequently, we held that the circuit court's refusal to grant an injunction was plainly wrong. *Id.*

Finally, in *Snead*, the owners of a 60-foot-wide easement complained about the placement of objects, including a chain link fence, over their easement. 279 Va. at 610. The objects did not interfere with travel on the gravel road. The evidence, however, established that "the gravel road experiences traffic in both directions," and that "it is not wide enough in its present state to accommodate two vehicles at the same time." *Id.* at 612. The owner of the servient estate admitted that the fence prevented the holders of the easement from using two-thirds of the easement. *Id.* at 616. We held that the fence encroachment was impermissible. *Id.*

5

We acknowledge that some statements in our prior decisions could lead to the conclusion reached by the Court of Appeals and the circuit court in this case. Those statements, however, cannot be read in isolation from the facts of the cases and from broader principles of property law. In *Pizzarelle* and *Snead*, the facts established that the encroachments substantially interfered with the easement holder's right of ingress and egress and, therefore, compelled injunctive relief. In other cases, such as *Piney Meeting House* and *Walton*, the servient owner's activities did not present an unreasonable burden upon the holders of the easement for ingress and egress.

Furthermore, the common law has long supported the proposition that landowners can use their land as they deem fit, provided they do not interfere with the rights of others. *Tvardek v. Powhatan Village Homeowners Ass'n*, 291 Va. 269, 279 (2016) (noting "the common law's ancient antipathy toward restrictions on the free use of private property"); *Walton*, 252 Va. at 327 (a "servient owner [has] the right to use his land in a manner not inconsistent with the nature of the uses granted to the owner of the easement"); *Shenandoah Acres, Inc. v. D.M. Conner, Inc.*, 256 Va. 337, 342 (1998) ("Under well-settled principles, a conveyance of an easement that is non-exclusive does not strip the servient landowner of its right to all use of the land"; instead, "[t]he servient landowner retains the right to use its property in any manner that does not unreasonably interfere with the lawful dominant use."). The evidence here established that the items Thibault placed along the gravel road did not interfere with the Yosts' ingress and egress.

II.    CODE § 55.1-305 DOES NOT REQUIRE THE REMOVAL OF ALL OBSTRUCTIONS FROM A RIGHT OF WAY EASEMENT, EVEN WHEN THE EASEMENT IS OF A SPECIFIED WIDTH.

Code § 55.1-305 sets forth some guardrails for the easements, both for the owners of the dominant estate and for the owners of the servient estate. It provides as follows:

> Unless otherwise provided for in the terms of an easement, the owner of a dominant estate shall not use an easement in a way that is not reasonably consistent with the uses contemplated by the grant of the easement, and *the owner of the servient estate shall not engage in an activity or cause to be present any objects either upon the burdened land or immediately adjacent to such land that unreasonably interferes with the enjoyment of the easement by the owner of the dominant estate.* For the purposes of this section, "object" does not include any fence, electric fence, cattle guard, gate, or division fence adjacent to such easement as those terms are defined in §§ 55.1-2800 through 55.1-2826. Any violation of this section may be deemed a private nuisance, provided, however, that the remedy for a violation of this section shall not in any manner impair the right to any other relief that may be applicable at law or in equity.

(Emphasis added).

Under the plain language of this provision, the specific terms of the easement are the first place to look. *Id.* (stating that a statute's conditions and remedy apply "[u]nless otherwise provided for in the terms of an easement"). Here, the terms of the easement specify that it is for a "right of ingress and egress over an outlet road." Although the language specifies a width of 50 feet, the purpose of the easement is for coming and going over an outlet road. Next, the statute prohibits "the owner of a dominant estate" from "usi[ng] an easement in a way that is not reasonably consistent with the uses contemplated by the grant of the easement." *Id.* That provision is not at issue in this appeal. Finally, Code § 55.1-305 prohibits "the owner of the servient estate" from "engag[ing] in an activity or caus[ing] to be present any objects either upon the burdened land or immediately adjacent to such land that *unreasonably interferes* with the enjoyment of the easement by the owner of the dominant estate" (emphasis added). The evidence here unequivocally established that the Yosts are able to travel to and from their house over the land owned by Thibault. Accordingly, there is no basis to enjoin Thibault under this statute.

7

Consistent with our cases and Code § 55.1-305, we hold that the owner of a servient estate is not automatically required to remove all objects intruding into an easement of a defined width. Instead, courts reviewing claims of an impermissible encroachment upon an easement, whether of defined width or otherwise, should (1) examine the language of the deed to determine the purpose of the easement and the intent of the parties; and (2) evaluate whether the actions of the owner of the servient estate unreasonably interfere with the easement.

The evidence unequivocally established that the fences, vines, haybales and other items Thibault placed on the side of the gravel road do not interfere with the Yosts' ingress and egress in any appreciable way.[2] Therefore, Thibault was not required to remove these items from within the boundaries of the easement. The Court of Appeals and the circuit court erred in holding otherwise.[3]

---

[2] The Yosts have expressed a concern that their easement could be extinguished by prescription if Thibault is not compelled to remove the objects placed in the width of their easement. We have not addressed the requirements for an easement owner's forfeiture of an easement through prescription, but persuasive authority acknowledges the possibility. *See* Powell on Real Property § 34.21 (2026) (noting that "[t]he servient owner can extinguish an easement in whole or in part by adverse uses continued for the prescriptive period"). The same authority observes that because a servient owner "may use his or her land in any manner desired" – so long as that use does not interfere with the right of an easement holder – "an act that serves to start the prescription period in the servient tenant's favor must be one clearly wrongful as to the owner of the easement. The use of the land by the servient tenant must be one that is incompatible or irreconcilable with the authorized right of use." *Id.* The same treatise goes on to note that constructing "permanent structures, such as a building or a wall, or other obstructions seriously interfering with the right of use, are sufficient to extinguish the right." *Id.* In contrast, fences or gates, or "the use of the servient land for farming purposes do[] not necessarily bar the exercise of an easement." *Id.* This case does not call upon us to resolve the contours of Virginia law on this point.

[3] We recognize that a change in circumstances may require a different answer. For example, if traffic increases along the gravel road, making the width of the existing road inadequate for ingress and egress, or if erosion renders driving over the road impracticable, it may become necessary to use the full width of the easement for ingress and egress.

CONCLUSION

For the reasons noted above, we will reverse the judgment of the Court of Appeals of

Virginia and enter final judgment for Thibault.

*Reversed and final judgment.*